**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
--------------------------------------------------------------x
                                        :
In re:                                  :  Chapter 11
                                        :
     CONSOLIDATED INFRASTRUCTURE        :  Case No. 19-_____ (___)
     GROUP, INC.,¹                      :
                                        :
                    Debtor.             :
--------------------------------------------------------------x
```

**MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE CONTINUED USE OF THE DEBTOR'S
CASH MANAGEMENT SYSTEM; (II) GRANTING AN EXTENSION OF TIME TO
COMPLY WITH 11 U.S.C. § 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS;
AND (III) SCHEDULING A FINAL HEARING ON THE MOTION**

Consolidated Infrastructure Group, Inc. (the "Debtor"), by and through its proposed undersigned counsel, Richards, Layton & Finger, P.A., hereby submits this motion (the "Motion") for entry of interim and final orders, authorizing, but not directing, the Debtor: (a) to continue use of its current cash management system, existing bank accounts, and business forms, including, authorizing the Debtor to open and close bank accounts and authorizing all banks participating in the cash management system to honor certain transfers and charge bank fees and certain other amounts, (b) granting an extension of time to comply with section 345(b) of the Bankruptcy Code, to the extent it is applicable, and (c) scheduling a final hearing on the Motion. In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Michael G. Johnson in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith. In further support of the Motion, the Debtor respectfully represents as follows:

---

¹        The last four digits of the Debtor's federal tax identification number are (6870). The mailing address for the Debtor is 11620 Arbor Street, Suite 101, Omaha, Nebraska 68144.

## JURISDICTION AND VENUE

1.       This Court has jurisdiction over the case, the Debtor, property of the Debtor's estate and this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.       Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.       The statutory and legal predicates for the relief requested in this Motion are sections 105, 345(b), 363(b), 503(b)(1), 1107, and 1108 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5.       On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

6.       Established in 2016 and headquartered in Omaha, Nebraska, the Debtor provides underground utility locating and damage prevention services to support companies that conduct underground construction and maintenance.  By providing detailed information on what lies

2

beneath the surface, the Debtor is able to help protect communities from harms that could otherwise occur when parties, such as utility or other companies, dig underground.

7.       Specifically, the Debtor provides accurate, on-time damage prevention services to ensure its customers' valuable underground assets are protected.  These "811" locating services are tailored to the needs of each customer, and include handling emergency and real time notice locate requests, damage investigations (including testimonial support), extended locates, projects (including extraordinary projects), site surveillance, and route patrol and monitoring.

8.       Additional factual background regarding the Debtor, including its business operations, capital and debt structures, and the events leading to the filing of this chapter 11 case, is set forth in detail in the First Day Declaration.

## A.       The Debtor's Cash Management System

9.       Prior to the Petition Date, the Debtor employed a cash management system efficiently to collect, transfer, and disburse the funds generated by the Debtor's business operations (the "Cash Management System").  The Debtor's Cash Management System assists the Debtor's cash forecasting and reporting, so that it can accurately monitor and record the timely collection and disbursement of funds.

10.       In short, maintenance of the Cash Management System is critical to the continued execution and achievement of the Debtor's strategic business objectives.  To avoid any further disruption caused by this chapter 11 case and to maximize the value of the Debtor's estate, it is essential that the Debtor be allowed to maintain its well-developed Cash Management System that it has employed since its inception.

## B.       The Debtor's Bank Accounts

10.       In the ordinary course of business, the Debtor depends on the maintenance of its bank accounts, all of which are held at Canadian Imperial Bank of Commerce ("CIBC") and

3

Wells Fargo Bank, N.A. ("Wells Fargo") (collectively and including any existing banks that may have inadvertently been omitted and any additional banks or financial institutions, the "Banks"), a complete list of bank accounts is annexed hereto as **Exhibit C** (collectively and including any existing bank accounts that may have inadvertently been omitted and any additional bank accounts that may be opened, the "Bank Accounts").  Both CIBC and Wells Fargo are FDIC-insured.  In addition, Wells Fargo is recognized by the United States Trustee for Region 3 as an authorized depository for chapter 11 debtor in possession funds.[2]

11.    The purpose of each of the Debtor's Bank Accounts is set forth briefly below:

**Operating Account (*3400)**:    The Debtor maintains an operating account ("Operating Account") with CIBC, which maintains the Debtor's payables, via ACH electronic ACH transfers (as defined below) and checks.  Payroll and other payables are made from the Operating Account.  The Operating Account is a zero balance account.  As needed, funds are released from the Blocked Account (defined below) into the Operating Account.

**Blocked Account (*6422)**:  The Debtor maintains a blocked account with CIBC to hold receivables (the "Blocked Account").  As needed, funds are automatically released from the Blocked Account to cover any outflows from the Operating Account.

**Checking Account (*8263)**:  The Debtor maintains a checking account ("Checking Account") with Wells Fargo to pay down credit card balances related to the Debtor's credit card program with Wells Fargo.

**Restricted Cash Account (*8271)**:  The Debtor maintains a restricted cash account ("Restricted Cash Account") with Wells Fargo solely to hold cash collateral required (1) to collateralize a letter of credit payable to Automotive Rentals, Inc. and ARI Fleet, LT (together, "ARI"), pursuant to a lease agreement through which CIG leases all of its vehicles used in the field, and (2) to collateralize the Debtor's corporate credit card program with Wells Fargo, which the Debtor is in the process of terminating.

---

[2]    Upon information and belief, CIBC is not recognized by the United States Trustee for Region 3 as an authorized depository; however, CIBC is an FDIC-insured bank that was formerly known as the Private Bank and Trust Company.  The Private Bank and Trust Company was an authorized depository before it was acquired by CIBC.

4

12.     On the Petition Date, the Debtor's bank accounts contained a total of approximately $1.35 million throughout four (4) bank accounts.

## C.     The Business Forms

13.     The Debtor uses numerous business forms in the ordinary course of its business. Due to the nature and scope of the Debtor's business operations and the large number of suppliers of goods and services as well as the Debtor's customers with whom the Debtor deals with on a regular basis, it is important that the Debtor be permitted to continue to use these business forms without alteration or change and without the "Debtor in Possession" designation. Otherwise, the estate will be required to bear a potentially significant expense that the Debtor believes is unwarranted.   However, in compliance with Local Rule 2015-2, once the paper business forms are depleted, the Debtor will then replace them with forms containing the "Debtor in Possession" designation.  *See* Local Rule 2015-2(a) ("[O]nce the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation 'Debtor in Possession' and the corresponding bankruptcy number on all such checks.").

## RELIEF REQUESTED

14.     By this Motion, pursuant to sections 105(a), 345(b), 363(b), 503(b)(1), 1107, and 1108 of the Bankruptcy Code, the Debtor seeks entry of interim and final orders, substantially in the form attached to this Motion as **Exhibit A** and **Exhibit B**, respectively:

(a)     Authorizing the Debtor to continue to use its Cash Management System, subject to any modification or other relief granted by order of this Court relating thereto, including the following:

(i)     the continued use of the existing Bank Accounts (as defined below) at the Banks with the same names and account numbers as such Bank Accounts existed immediately prior to the Petition Date, and authorizing the Debtor to open or close Bank Accounts in the ordinary course of business, subject to the consent of the DIP Agent, at the direction of the DIP Lenders;

5

(ii)    the ability of the Debtor to deposit funds into and withdraw funds from any of the Bank Accounts (subject to available funds or, in the case of zero balance accounts, subject to the availability of funds in the applicable linked funding accounts) by all usual means, including but not limited to checks, wire transfers, electronic funds transfers, ACH and other debits;

(iii)   the waiver of any requirements to establish additional separate accounts for cash collateral and/or tax payments;

(iv)   authorizing the Banks to maintain, service and administer the Bank Accounts, without interruption and in the ordinary course of business, in accordance with applicable non-bankruptcy law and the account agreements and/or other service documentation between the applicable Bank and the Debtor relating to such Bank Accounts;

(v)    authorizing the Banks to rely on the Debtor's representations as to which Disbursements (as defined below) are authorized to be honored or dishonored, whether or not such Disbursements are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is authorized by an order of the Court;

(vi)   authorizing the Banks to charge and collect, and authorizing, but not directing the Debtor to pay, the prepetition and post-petition service charges and other fees and expenses to which the Banks are entitled under the terms of its account agreements and/or other service documentation with the Debtor (collectively, the "Bank Fees"); and

(vii)  authorizing the Banks to charge back Returned Items (as defined below) to the Bank Accounts in the normal course of business.

(b)    Authorizing the Debtor to continue to use its existing preprinted business forms without alteration or change; *provided*, *however*, that once the Debtor has depleted its existing stock, the Debtor shall order new stock with the "debtor in possession" designation; and

(c)    Granting an extension of time to comply with section 345(b) of the Bankruptcy Code.

15.    Contemporaneously with the filing of this Motion, the Debtor has filed other motions seeking authority to pay certain prepetition obligations, including obligations related to employee payroll and employee benefits, critical vendors and taxes.  With respect to certain of these prepetition obligations, the Debtor already has issued, in the ordinary course of business, checks and other debits that have yet to clear the banking system.  In other instances, the Debtor will issue checks or other debits post-petition on account of the prepetition obligations once the Court has entered an appropriate order permitting the Debtor to do so.  The Debtor intends to

6

inform the Banks of which prepetition checks and other debits should be honored pursuant to orders of the Court authorizing such payment.  Regardless of any orders of the Court authorizing prepetition and/or post-petition payments by the Debtor, the Banks shall not be required to honor any overdrafts, checks, drafts, ACH transfers, debits, wires or other transfers from the Bank Accounts (collectively, the "Disbursements") unless there are collected and immediately available funds in the Bank Accounts sufficient to cover such requests.

16.    As a result of the foregoing, the Debtor requests that the Banks be authorized to accept and honor all representations from the Debtor as to which Disbursements should be honored or dishonored consistent with any order(s) of the Court and governing law, whether such Disbursements are dated or made prior to, on or subsequent to the Petition Date.  To the extent that the Debtor directs that any Disbursement be dishonored or the Banks inadvertently dishonor any Disbursements, the Debtor requests authority to issue replacement Disbursements consistent with the orders of this Court.  The Debtor further requests that the Banks shall not be liable to any party on account of:  (a) following the Debtor's instructions or representations; (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored despite implementation of reasonable and customary item handling procedures; or (c) as the result of an innocent mistake made despite implementation of reasonable and customary item handling procedures.

17.    As described in greater detail below, the Debtor submits that the relief requested herein will help to ensure the Debtor's orderly entry into and administration in chapter 11 and avoid many of the possible disruptions and distractions that could divert the Debtor's attention from more pressing matters during the initial days of this chapter 11 case.

RLF1 20733655v.1

**BASIS FOR RELIEF**

**A. The Debtor's Continued Use of Its Cash Management System, Bank Accounts, and Business Forms is Essential to Its Ongoing Business and is in the Best Interests of the Debtor's Estate and its Creditors.**

Cash Management System

18.    The Debtor seeks interim authority to continue to use its Cash Management System consistent with its prepetition business practices and procedures, pending a final hearing and further authorization pursuant to a final order on the Motion.  The Cash Management System is an ordinary course, essential business practice of the Debtor, and absent the requested relief, the Debtor would have to alter significantly its Cash Management System in order to comply with United States Trustee guidelines (the "UST Guidelines").[3]  The Cash Management System currently in place enables the Debtor to: (a) control and monitor corporate funds, (b) ensure cash availability, (c) reduce administrative expenses by facilitating the movement of funds, and (d) comply with the pre-petition credit facilities currently outstanding and the Debtor's post-petition credit facility.

19.    In light of the manner in which the Debtor generates and tracks sales related to its operations, any disruption in the Debtor's cash management procedures will hamper the Debtor's efforts to preserve and enhance the value of its estate.  Altering the Cash Management System may disrupt payments to key vendors, employees, and various staffing agencies, among others.  Therefore, it is essential that the Debtor be permitted to continue to use its Cash Management System in accordance with its existing cash management procedures.  The Debtor further seeks authority to implement ordinary course changes to its Cash Management System, should the

---

[3]    Among other requirements, the UST Guidelines with respect to a debtor's cash management system include:  (a) closing all existing bank accounts and opening new debtor in possession accounts and (b) maintaining separate debtor in possession accounts for cash collateral and postpetition taxes.

Debtor, in the ordinary course of business, determine that changes in the Cash Management System are beneficial to its business and estate.

20.     In addition, the Debtor requests authority to open and close bank accounts.  The Debtor will make such requests subject to the consent of the DIP Agent, at the direction of the DIP Lenders.  The Debtor requests that the Banks be authorized to honor the Debtor's request(s) to open or close any Bank Accounts; provided, however, that any new domestic account is established at a bank insured with the FDIC and is organized under the laws of the United States or any state therein or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, at banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware or at such banks that are willing to execute such an agreement.  The Debtor also agrees to provide written notice, within fifteen (15) days following the opening or closing of any Bank Account, to the United States Trustee, the DIP Agent and any official committee(s) appointed in this case.  Except as otherwise provided in this Motion, the Debtor will not implement any other changes to its Cash Management System without obtaining prior approval from the Court and providing notice to the DIP Lenders.

21.     Bankruptcy courts routinely permit chapter 11 debtors to maintain their existing cash management systems, generally treating requests for such relief as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see also In re Columbia Gas Systems, Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993) (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient"); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtors to use their prepetition "routine cash

9

management system" was entirely consistent with applicable provisions of the Bankruptcy Code).

22.     Further, the continued postpetition use of cash management systems also has been approved as a routine matter in other bankruptcy cases in this District (collectively, "Cases Cited"). *See, e.g., Katy Industries Inc.*, Case No. 17-11101 (KJC) [D.I. 149] (Bankr. D. Del. June 16, 2017) (authorizing debtors to maintain prepetition cash management system during the pendency of their chapter 11 cases); *In re Panda Temple Power, LLC,* Case No. 17-10839 (LSS) [D.I. 111] (Bank. D. Del. May 12, 2017 (same); *In re Ciber, Inc.*, Case No. 17-10772 (BLS) [D.I. 137] (Bank. D. Del. April 28, 2017) (same); *In re American Apparel, LLC*, Case No. 16-12551 (BLS) [D.I. 290] (Bankr. D. Del. Dec. 9, 2016) (same); *In re Vertellus Specialties Inc.*, Case No. 16-11290 (CSS) [D.I. 155] (Bank. D. Del. Jun. 24, 2016) (same); *In re Aspect Software Parent, Inc.*, Case No. 16-10597 (MFW) [D.I. 120] (Bankr. D. Del. Apr. 1, 2017) (same); *In re Allied Nevada Gold Corp.*, Case No. 15-10503 (MFW) [D.I. 56] (Bankr. D. Del. Mar. 11, 2015) (same); *In re Green Field Energy Services, Inc.,* Case No. 13-12783 (KG) [D.I. 53] (Bankr. D. Del. Oct. 29, 2013) (same).[4]

23.     The Debtor respectfully submits that under the circumstances, the maintenance of the Debtor's Cash Management System in substantially the same form as it existed prior to the Petition Date is in the best interests of the Debtor's estate and its creditors.  Preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that inevitably would

---

[4]     The referenced orders are voluminous in nature and, therefore, are not attached to this Motion; however, in accordance with Local Rule 7007-2, as made applicable to main cases by the Court's General Chambers Procedures, undersigned counsel has copies of each order and will make them available to the Court or to any party that requests them.  Additionally, the orders are available on the Court's CM/ECF PACER site at the cited docket index numbers and on the dates specified above.

RLF1 20733655v.1

be associated with any substantial changes to the Cash Management System will facilitate the Debtor's stabilization of its postpetition business operations.

Business Forms

24.     As set forth above, the Debtor currently maintains multiple Bank Accounts in the ordinary course of its business.  To preserve a "business as usual" atmosphere, as part of its request to maintain its Cash Management System, the Debtor hereby requests that it be permitted to continue to use its Bank Accounts with the same account numbers.  Absent this relief, the UST Guidelines would require the Debtor to close all of its prepetition Bank Accounts and open new accounts, which will disrupt the Debtor's relationships with its customers and suppliers, all of which are accustomed to working with the current Cash Management System.  Allowing the Debtor to continue to use its prepetition Bank Accounts will assist the Debtor in accomplishing a smooth transition to operating in chapter 11.

25.     To protect against the possible inadvertent payment of prepetition claims, the Debtor will immediately advise its Banks not to honor checks issued by the Debtor prior to the Petition Date, except as otherwise expressly permitted by an order of the Court.  The Debtor will communicate to the Banks what checks have been expressly permitted by an order of the Court. Moreover, the Debtor has the capacity to draw the necessary distinctions between prepetition and postpetition obligations and payments without closing the Bank Accounts and opening new ones. Authority to continue the use of bank accounts has been granted in other chapter 11 cases.  *See, e.g.*, Cases Cited, *supra*, ¶ 21 (authorizing debtors to designate, maintain and continue to use all of the prepetition bank accounts under the same account numbers).

26.     In the ordinary course of its business, the Debtor uses a multitude of checks and other business forms.  The majority of the Debtor's Bank Accounts are managed electronically

and do not use paper forms.  However, the Debtor may use limited preprinted letterhead checks and related documents (the "Preprinted Forms").  By virtue of the nature and scope of the Debtor's business operations and the large number of suppliers of goods and services with whom the Debtor deals with on a regular basis, it is important that the Debtor be permitted to continue to use the Preprinted Forms without alteration or change and without the "Debtor in Possession" designation.  Otherwise, the estate will be required to bear a potentially significant expense which the Debtor's respectfully submits is unwarranted and foreign customers and vendors may be confused by any such changes.

27.     As parties that presently conduct business with the Debtor likely will be aware of the Debtor's status as debtors in possession, the alteration of the Debtor's Preprinted Forms would be unnecessary and unduly burdensome.  Further, this Court has allowed debtors to use their prepetition business and check forms without the "Debtor in Possession" label in other large cases.  *See, e.g.*, Cases Cited, *supra*, ¶ 21 (authorizing debtors to use their present forms, including preprinted checks, without reference to their status as debtors in possession, provided, however, that debtors would start imprinting the legend "DIP" thereon following depletion of the debtors' inventory of preprinted forms).

**B.     The Court Should Authorize Banks Participating in the Cash Management System to Honor Certain Transfers, Charge Bank Fees, and Certain Other Amounts.**

28.     Contemporaneously with the filing of this Motion, the Debtor has filed various motions for authorization to pay prepetition claims.  With respect to some of these claims, prior to the Petition Date, the Debtor issued checks that have yet to clear the banking system and, but for the entry of an Order of the Bankruptcy Court, such checks would not clear.  With respect to other debt, the Debtor intends to issue checks postpetition on account of such prepetition claims once the Court enters an order permitting the Debtor to take such action.  The Debtor intends to

RLF1 20733655v.1

inform its Banks regarding which prepetition checks should be honored pursuant to orders of the Court authorizing such payment.

29.     As a result of the foregoing, the Debtor requests the Banks be authorized to accept and honor all representations from the Debtor as to which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to, on or subsequent to the Petition Date.  Pursuant to the relief requested in this Motion, the Banks will not be liable to any party on account of: (a) following the Debtor's instructions or representations as to any order of this Court; (b) subject to the sufficiency of good collected funds, honoring any prepetition check or item in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) an innocent mistake made despite implementation of reasonable item-handling procedures.  Such relief is reasonable and appropriate because the Banks are not in a position independently to verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

30.     Finally, the Debtor requests authority for the Banks to charge, and the Debtor to pay or honor, both prepetition and postpetition Bank Fees.  The Debtor also requests that the Banks be authorized to charge back to the appropriate Bank Account(s) of the Debtor any amounts resulting from returned checks or other returned items, including, without limitation, returned items that result from automated clearing house transactions ("ACH Transfers"), wire transfers, or other electronic transfers of any kind (collectively, the "Returned Items") regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the Returned Items relate to prepetition or postpetition items or transfers.

RLF1 20733655v.1

31.    The Debtor requires this relief to minimize the disruption of the Cash Management System and its Bank Accounts and to assist them in accomplishing a smooth transition to operating in chapter 11.  Authority for debtors to pay Bank Fees and banks to charge back Returned Items has been routinely granted in other chapter 11 cases.  *See, e.g.*, Cases Cited, *supra*, ¶ 21.

## C.    An Extension of Time to Comply With Section 345(b) of the Bankruptcy Code is Warranted.

32.    By this Motion, the Debtor seeks a thirty (30) day extension of the time to comply with section 345(b) of the Bankruptcy Code to the extent it is not already in compliance, without prejudice to the Debtor's ability to seek a further extension or final waiver of those requirements.

33.    Section 345(a) of the Bankruptcy Code governs a debtor's deposit and investment of cash during its chapter 11 case and authorizes such deposits or investments as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires that the debtor obtain from the "entity with which the money is deposited or invested a bond in favor of the United States [that is] secured by the undertaking of a[n adequate] corporate surety . . . unless the court for cause orders otherwise."

34.    In a chapter 11 case such as this one, strict adherence to the requirements of section 345(b) of the Bankruptcy Code would be inconsistent with the value-maximizing purpose of chapter 11 by unduly hampering a debtor's ability under section 345(a) to invest money such "as will yield the maximum reasonable net return on such money."  As a result, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b)

14

to provide that its strict investment requirements may be waived or modified if the court so orders "for cause."  140 Cong. Rec. H. 10,767 (Oct. 4, 1994).

35.      Historically, all of the Debtor's excess funds have been maintained in domestic bank accounts insured by the FDIC.  To the extent the Debtor's cash management practices may not strictly comply in all respects with the guidelines identified in section 345 of the Bankruptcy Code, the Debtor's investments are nevertheless safe and prudent.  However, during the extension period, the Debtor proposes to engage with the United States Trustee in discussions to determine what modifications to its investment guidelines, if any, would be appropriate under the circumstances.

**D.      Interim Approval Should Be Granted and a Final Hearing Should be Scheduled.**

36.      The Debtor requests that the Court conduct a preliminary hearing on the Motion and, on an interim basis, grant the relief requested in this Motion.  In addition, the Debtor respectfully requests that the Court schedule a final hearing on this Motion at the Court's convenience following entry of an interim order.  Such relief is necessary in order to maintain and preserve the ongoing operations of the Debtor.

<u>**RESERVATION OF RIGHTS**</u>

37.      Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of any of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as

15

an admission to the validity of any claim or a waiver of any of the Debtor's rights to dispute such claim.

## BANKRUPTCY RULE 6003 IS SATISFIED

38.     Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm" a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition Date.  *See Czyewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts can approve orders that allow payment of prepetition debt, which is necessary for the debtors to reorganize and restructure their debts and maximize the value of the bankruptcy estate).  As described above and in the First Day Declaration, the Debtor's business operations rely heavily on the Debtor's efficient and uninterrupted Cash Management System.  Accordingly, the Debtor submits that the relief requested in this Motion is necessary to avoid immediate and irreparable harm and, therefore, the requirements of Bankruptcy Rule 6003 for expedited relief are satisfied.

## REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

39.     In addition, by this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth above, the Debtor requires immediate relief to continue ordinary business operations for the benefit of all parties in interest.  Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

16

## NOTICE

40.     Notice of this Motion shall be provided to: (i) the Office of the United States Trustee for the District of Delaware (Attn: Linda Richenderfer, Esq.); (ii) the United States Attorney for the District of Delaware; (iii) the parties on the Debtor's list of twenty (20) largest creditors; (iv) the DIP Lenders; (v) DLA Piper LLP (US), as counsel to the DIP Lenders; (vi) the Banks; (vii) the Internal Revenue Service; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties as required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtor respectfully submits that no further notice of this Motion is required.

## NO PRIOR REQUEST

41.     No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter the interim order, substantially in the form attached hereto as **Exhibit A** granting the relief requested in this Motion, (ii) schedule a final hearing on the Motion and thereafter enter the final order substantially in the form attached hereto as **Exhibit B**, and (iii) grant such other and further relief as the Court may deem proper.

Dated: January 30, 2019
      Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**

/s/ *Daniel J. DeFranceschi*
Daniel J. DeFranceschi (No. 2732)
Russell C. Silberglied (No. 3462)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: defranceschi@rlf.com
      silberglied@rlf.com
      heath@rlf.com
      shapiro@rlf.com

*Proposed Counsel to the Debtor and Debtor in Possession*

# **Exhibit A**

## **(Proposed Interim Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------x
                                             :
In re:                                       :   Chapter 11
                                             :
     CONSOLIDATED INFRASTRUCTURE             :   Case No. 19-_____  (___)
     GROUP, INC.,[1]                         :
                                             :
              Debtor.                        :   Re: D.I. No. ___
------------------------------------------------------------x
```

**INTERIM ORDER (I) AUTHORIZING THE CONTINUED USE OF THE DEBTOR'S**
**CASH MANAGEMENT SYSTEM; (II) GRANTING AN EXTENSION OF TIME TO**
**COMPLY WITH 11 U.S.C. § 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS;**
**AND (III) SCHEDULING A FINAL HEARING ON THE MOTION**

This matter coming before the Court on the *Motion of the Debtor for Entry of Interim and*

*Final Orders (I) Authorizing the Continued Use of the Debtor's Cash Management System; (II)*

*Granting an Extension of Time to Comply with 11 U.S.C. § 345(b) Deposit and Investment*

*Requirements; and (III) Scheduling a Final Hearing on the Motion* (the "Motion"),[2] for an

interim order, pursuant sections 105(a), 345(b), 363(b), 503(b)(1), 1107, and 1108 of the

Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (a) authorizing, but not directing, the

Debtor to continue use of its (i) current Cash Management System, (ii) existing Bank Accounts,

and (iii) business forms, including, authorizing the Debtor to open and close bank accounts and

authorizing all Banks participating in the Cash Management System to honor certain transfers

and charge Bank Fees and certain other amounts, (b) granting an extension of time to comply

with section 345(b) of the Bankruptcy Code, and (c) scheduling a final hearing on the Motion, all

---

[1]     The last four digits of the Debtor's federal tax identification number are (6870).  The mailing address for the Debtor is 11620 Arbor Street, Suite 101, Omaha, Nebraska 68144.

[2]     Capitalized terms used but not otherwise defined in this Interim Order shall have the meanings ascribed to them in the Motion.

as further described in the Motion; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion being adequate and appropriate under the particular circumstances; the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the hearing; after due deliberation, and good and sufficient cause having been shown and in order to avoid immediate and irreparable harm to the Debtor and its estate,

**IT IS HEREBY ORDERED THAT:**

1.       The Motion is GRANTED, on an interim basis, as set forth in this Interim Order.

2.       The Debtor is authorized to: (a) maintain and continue using in the ordinary course, subject to the terms of this Interim Order, the Cash Management System described in the Motion, including all Bank Accounts open and in use as of the Petition Date, as listed in Exhibit C to the Motion, and (b) subject to the consent of the DIP Agent, at the direction of the DIP Lenders, open and close Bank Accounts without further order of this Court, to the extent consistent with any postpetition financing agreements (the "DIP Documents") and any orders of this Court relating thereto, *provided*, *however*, that (i) such Bank Account is with a Bank that is insured with the Federal Deposit Insurance Corporation or the foreign equivalent, and (ii) the Debtor gives notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware, the DIP Agent, the respective Bank, and any statutory committee(s) appointed in this chapter 11 case; *provided, further*, that the Debtor shall open any such new

2

Bank Account(s) at Banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such Banks that are willing to execute such an agreement.

3.        The Debtor is authorized to continue to use its Bank Accounts in use and operation as of the Petition Date under existing account numbers without interruption; *provided*, *however*, that no checks or other debits issued against the Bank Accounts prior to the commencement of this chapter 11 case shall be honored, except as otherwise set forth in this Interim Order or as authorized by other or further order of this Court and as represented by the Debtor to such Banks.

4.        Any applicable requirement to establish separate accounts for cash collateral and/or tax payments are hereby waived.

5.        The existing deposit agreements between the Banks and the Debtor will continue to govern the postpetition cash management relationship between the Debtor and such Banks, and all terms and conditions of such agreements, including the provisions governing the termination of the accounts and payment and accrual of fees, remain in full force and effect.

6.        Subject to paragraph 2 above, the Debtor and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business.

7.        The Debtor is authorized, without further order of this Court, to pay Bank Fees owed to the Banks, whether arising prepetition or Postpetition.

8.        The Banks are authorized to charge back to the appropriate accounts of the Debtor any amounts resulting from Returned Items, regardless of whether such items were deposited or

RLF1 20733655v.1

transferred prepetition or postpetition and regardless of whether the Returned Items relate to prepetition or postpetition items or transfers.

9.      The Banks are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtor as a debtor in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires, or ACH transfers drawn on the Bank Accounts after the Petition Date by the holders or makers thereof (to the extent of available funds), as the case may be, including with respect to checks or other items issued prior to the Petition Date to the extent authorized by this Interim Order or a further order of this Court.

10.      For Banks at which the Debtor holds Bank Accounts that are party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order, the Debtor shall (a) contact each such Bank, (b) provide the Bank with the Debtor's employer identification number, and (c) identify each of its Bank Accounts held at such Banks as being held by a debtor in possession in a bankruptcy case and provide the case number.

11.      For Banks at which the Debtor holds Bank Accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtor shall use reasonable efforts to cause the Banks to execute a Uniform Depository agreement in a form prescribed by the Office of the United States Trustee within thirty (30) days of the Petition Date.  The United States Trustee's rights to seek further relief from this Court on notice in the event such Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the United States Trustee are fully reserved.

4

12.     The Debtor shall have thirty (30) days (or such additional time as the United States Trustee may agree to) from the Petition Date within which to either come into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as agreed to by the United States Trustee, and that such extension is without prejudice to the Debtor's right to request a further extension or waiver of the requirements of section 345(b) of the Bankruptcy Code.

13.     Except for those checks, drafts, wires, or ACH Transfers that may be honored and paid in accordance with any order(s) of this Court authorizing payment of certain prepetition claims, and except as otherwise set forth in this Interim Order, no checks, drafts, wires, or ACH Transfers issued on the existing Bank Accounts prior to the Petition Date but presented for payment after the Petition Date shall be honored or paid.

14.     The Banks shall not be required to honor any Disbursements unless there are collected and immediately available funds in the Bank Accounts sufficient to cover such requests.   The Banks are authorized to rely on the Debtor's representations as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is authorized by an order of the Court.   The Banks shall not be liable to any party or otherwise deemed in violation of this Interim Order on account of (a) following the Debtor's instructions or Debtor's representations as to any order of this Court; (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored despite implementation of reasonable item handling procedures; or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures.

15.     To the extent that the Debtor directs that any Disbursement be dishonored or the Banks inadvertently dishonor any Disbursements, the Debtor is authorized to issue replacement Disbursements consistent with the orders of this Court.

16.     The Banks are authorized to continue to honor any standing instructions of the Debtor with respect to daily or periodic wires, ACH Transfers or other debits made to the Bank Accounts in accordance with the Debtor's prepetition instructions.   The Banks are further authorized to debit the Bank Accounts in the ordinary course of business and without further order of this Court on account of all checks drawn on the Debtor's Bank Accounts, which were cashed at the counter of Banks or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date.

17.     The Debtor is authorized to continue to use its existing checks and other business forms, which checks and business forms shall not be required to include the legend "Debtor in Possession" or the case number; *provided*, *however*, that, with respect to checks or other business forms that the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend, and include the debtor in possession and the case number on such items within ten (10) business days of the date of entry of this Interim Order.  However, if new checks and business forms are ordered, such checks and business forms shall be required to include the legend "Debtor in Possession" and a "debtor in possession case number."  Third-party payroll and benefits administrators and providers are also authorized to prepare and issue checks on behalf of the Debtor, subject to the provisions of this paragraph.

18.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of any of the

Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code.  Any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of any of the Debtor's rights to dispute such claim.

19.    The Debtor shall maintain accurate and detailed records of all transfers, so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and post-petition transactions.

20.    Notwithstanding the use of a consolidated Cash Management System, the Debtor shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on its disbursements.

21.    Except as may be otherwise ordered by the Court, including, without limitation, any order approving postpetition debtor-in-possession financing, the Debtor is prohibited from making payments to any non-debtor affiliate.

22.    The Debtor is hereby authorized to execute any additional documents and cooperate with the Banks as may be required to carry out the intent and purpose of this Interim Order.

23.    The final hearing (the "Final Hearing") on the Motion shall be held on _____ __, 2019 at ___:___ __.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion (each, an "Objection") shall be filed on or before 4:00 p.m. prevailing Eastern Time on _____ __, 2019, and served on the following parties via first class and electronic mail, as applicable:  (i) the Debtor, Consolidated

7

Infrastructure Group, Inc., 11620 Arbor Street, Suite 101, Omaha, Nebraska 68144 (Attn: Mike Johnson); (ii) proposed counsel to the Debtor, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:  Daniel J. DeFranceschi, Esq. [defranceschi@rlf.com]); (iii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Lockbox 35, Wilmington, Delaware 19801 (Attn:  Linda Richenderfer, Esq. [linda.richenderfer@usdoj.gov]); (iv) counsel to any statutory committee appointed in this chapter 11 case; and (v) counsel for the DIP Lenders, DLA Piper LLP (US), 444 W. Lake Street, Suite 900, Chicago, Illinois 60606 (Attn: Richard A. Chesley, Esq. [richard.chesley@dlapiper.com] and Jamila Justine Willis, Esq. [jamila.willis@dlapiper.com]), and DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 (Attn: R. Craig Martin, Esq. [craig.martin@dlapiper.com] and Maris Kandestin, Esq. [maris.kandestin@dlapiper.com]).   In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

24. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such motion.

25. The requirements set forth in Bankruptcy Rules 6003(b) and 6004(a) are satisfied by the contents of the Motion.

26. Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this Interim Order shall be immediately effective and enforceable upon its entry.

27. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

8

28.     The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Interim Order.

Dated: _____, 2019
       Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

9

**<u>Exhibit B</u>**

**(Proposed Final Order)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------------x
                                          :
In re:                                    :  Chapter 11
                                          :
      CONSOLIDATED INFRASTRUCTURE         :  Case No. 19-_____  (____)
      GROUP, INC.,¹                       :
                                          :
            Debtor.                       :  Re: D.Is. ___ & ___
-----------------------------------------------------------x
```

**FINAL ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE CONTINUED USE
OF THE DEBTOR'S CASH MANAGEMENT SYSTEM; AND
(II) GRANTING AN EXTENSION OF TIME TO COMPLY
WITH 11 U.S.C. § 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS**

This matter coming before the Court on the *Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing the Continued Use of the Debtor's Cash Management System; (II) Granting an Extension of Time to Comply with 11 U.S.C. § 345(b) Deposit and Investment Requirements; and (III) Scheduling a Final Hearing on the Motion* (the "Motion"),[2] for a final order, pursuant to sections 105(a), 345(b), 363(b), 503(b)(1), 1107, and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (a) authorizing, but not directing, the Debtor to continue use of its (i) current Cash Management System, (ii) existing Bank Accounts, and (iii) business forms, including, authorizing the Debtor to open and close bank accounts and authorizing all Banks participating in the Cash Management System to honor certain transfers and charge Bank Fees and certain other amounts, and (b) an extension of time to comply with section 345(b) of the Bankruptcy Code, all as further described in the Motion; the Court having

---

[1]    The last four digits of the Debtor's federal tax identification number are (6870).  The mailing address for the Debtor is 11620 Arbor Street, Suite 101, Omaha, Nebraska 68144.

[2]    Capitalized terms used but not otherwise defined in this Final Order shall have the meanings given to them in the Motion.

found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (b) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (d) notice of the Motion being adequate and appropriate under the particular circumstances, and no other or further notice need to be provided; the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the interim hearing; and the Court having granted the relief requested in the Motion; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted in this Final Order; and any objections to the requested relief having been withdrawn or overruled;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED, on a final basis, as set forth in this Final Order.

2.      The Debtor is authorized, on a final basis, to: (a) maintain and continue using in the ordinary course, subject to the terms of this Final Order, the Cash Management System described in the Motion, including all Bank Accounts in use as of the Petition Date, as listed on Exhibit C to the Motion, and (b) subject to the consent of the DIP Agent, at the direction of the DIP Lenders, open and close Bank Accounts without further order of this Court, to the extent consistent with any postpetition financing agreements (the "DIP Documents") and any orders of this Court relating thereto, *provided*, *however*, that (i) such Bank Account is with a Bank that is insured with the Federal Deposit Insurance Corporation or the foreign equivalent, and (ii) the Debtor gives notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware, the DIP Agent, the respective Bank, and any statutory committee(s)

2

appointed in this chapter 11 case; *provided, further*, that the Debtor shall open any such new Bank Account(s) at Banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such Banks that are willing to execute such an agreement.

3.     The Debtor is authorized to continue to use its Bank Accounts in use and operation as of the Petition Date under existing account numbers without interruption; *provided*, *however*, that no checks or other debits issued against the Bank Accounts prior to the commencement of this chapter 11 case shall be honored, except as otherwise set forth in this Final Order or as authorized by further order of this Court and directed by the Debtor.

4.     Any applicable requirement to establish separate accounts for cash collateral and/or tax payments are hereby waived.

5.     The existing deposit agreements between the Banks and the Debtor will continue to govern the postpetition cash management relationship between the Debtor and such Banks, and all terms and conditions of such agreements, including the provisions governing the termination of the accounts and payment and accrual of fees, remain in full force and effect.

6.     Subject to paragraph 2 above, the Debtor and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business.

7.     The Debtor is authorized, without further order of this Court, to pay Bank Fees owed to the Banks, whether arising prepetition or Postpetition.

8.     The Banks are authorized to charge back to the appropriate accounts of the Debtor any amounts resulting from Returned Items, regardless of whether such items were deposited or

3

transferred prepetition or postpetition and regardless of whether the Returned Items relate to prepetition or postpetition items or transfers.

9.      The Banks are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtor as a debtor in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires, or ACH transfers drawn on the Bank Accounts after the Petition Date by the holders or makers thereof (to the extent of available funds), as the case may be, including with respect to checks or other items issued prior to the Petition Date to the extent authorized by this Final Order or a further order of this Court.

10.     For Banks at which the Debtor holds Bank Accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtor shall use reasonable efforts to cause the Banks to execute a Uniform Depository agreement in a form prescribed by the Office of the United States Trustee within thirty (30) days of the Petition Date.  The United States Trustee's rights to seek further relief from this Court on notice in the event such Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the United States Trustee are fully reserved.

11.     The Debtor shall have thirty (30) days (or such additional time as the United States Trustee may agree to) from the Petition Date within which to either come into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as agreed to by the United States Trustee, and that such extension is without prejudice to the Debtor's right to request a further extension or waiver of the requirements of section 345(b) of the Bankruptcy Code.

12.     Except for those checks, drafts, wires, or ACH Transfers that may be honored and paid in accordance with any order(s) of this Court authorizing payment of certain prepetition claims, and no checks, drafts, wires, or ACH Transfers issued on the existing Bank Accounts prior to the Petition Date but presented for payment after the Petition Date shall be honored or paid.

13.     The Banks shall not be required to honor any Disbursements unless there are collected and immediately available funds in the Bank Accounts sufficient to cover such requests.  The Banks are authorized to rely on the Debtor's representations as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is authorized by an order of the Court.  The Banks shall not be liable to any party or otherwise deemed in violation of this Final Order on account of (a) following the Debtor's instructions or Debtor's representations as to any order of this Court; (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored despite implementation of reasonable item handling procedures; or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures.

14.     To the extent that the Debtor directs that any Disbursement be dishonored or the Banks inadvertently dishonor any Disbursements, the Debtor is authorized to issue replacement Disbursements consistent with the orders of this Court.

15.     The Banks are authorized to continue to honor any standing instructions of the Debtor with respect to daily or periodic wires, ACH Transfers or other debits made to the Bank Accounts in accordance with the Debtor's prepetition instructions.  The Banks are further

5

authorized to debit the Bank Accounts in the ordinary course of business and without further order of this Court on account of all checks drawn on the Debtor's Bank Accounts, which were cashed at the counter of Banks or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date.

16.     The Debtor is authorized to continue to use its existing checks and other business forms, which checks and business forms shall not be required to include the legend "Debtor in Possession" or a debtor in possession case number; *provided*, *however*, that, with respect to checks or other business forms that the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend, and include the debtor in possession case number, on such items within ten (10) business days of the date of entry of this Final Order. However, if new checks and business forms are ordered, such checks and business forms shall be required to include the legend "Debtor in Possession" and a "debtor in possession case number." Third-party payroll and benefits administrators and providers are also authorized to prepare and issue checks on behalf of the Debtor, subject to the provisions of this paragraph.

17.     Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of any of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code.  Any payment made pursuant to the Court's

6

RLF1 20733655v.1

order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of any of the Debtor's rights to dispute such claim.

18.     The Debtor shall maintain accurate and detailed records of all transfers, so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and post-petition transactions.

19.     Notwithstanding the use of a consolidated Cash Management System, the Debtor shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on its disbursements.

20.     Except as may be otherwise ordered by the Court, including, without limitation, any order approving postpetition debtor-in-possession financing, the Debtor is prohibited from making payments to any non-debtor affiliate.

21.     The Debtor is hereby authorized to execute any additional documents and cooperate with the Banks as may be required to carry out the intent and purpose of this Final Order.

22.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such motion.

23.     Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and shall be deemed to be a Final Order.

24.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

7

25.     The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Final Order.

Dated: _____, 2019
            Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

8

RLF1 20733655v.1

**Exhibit C**

**(List of Bank Accounts)**

| Debtor | Bank | Account Type | Account Number (Last 4) | Bank Address |
|---|---|---|---|---|
| Consolidated Infrastructure Group, Inc. | Canadian Imperial Bank of Commerce | Operating Account | 3400 | Canadian Imperial Bank of Commerce 120 South LaSalle Street Chicago, IL 60603 |
| Consolidated Infrastructure Group, Inc. | Canadian Imperial Bank of Commerce | Blocked Account | 6422 | Canadian Imperial Bank of Commerce 120 South LaSalle Street Chicago, IL 60603 |
| Consolidated Infrastructure Group, Inc. | Wells Fargo Bank, N.A. | Checking Account | 8263 | Wells Fargo Bank (182) PO Box 63020 San Francisco, CA 94163 |
| Consolidated Infrastructure Group, Inc. | Wells Fargo Bank, N.A. | Restricted Cash Account | 8271 | Wells Fargo Bank (182) PO Box 63020 San Francisco, CA 94163 |