**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x

In re:
: Chapter 11
:
CONSOLIDATED INFRASTRUCTURE : Case No. 19-_____ (___)
GROUP, INC.,[1]
:
:
Debtor. :

---------------------------------------------------------------x

**MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING THE DEBTOR TO (I) CONTINUE ITS INSURANCE POLICIES,
(II) PAY PREPETITION AND POSTPETITION OBLIGATIONS IN RESPECT
THEREOF, AND (III) CONTINUE PERFORMANCE UNDER THE
PREMIUM FINANCING AGREEMENT**

Consolidated Infrastructure Group, Inc. (the "Debtor"), by and through its proposed undersigned counsel, Richards, Layton & Finger, P.A., hereby submits this motion (the "Motion") for entry of interim and final orders, authorizing, but not directing, the Debtor, in its sole discretion, (i) to continue its insurance policies and pay prepetition and postpetition obligations in respect thereof, (ii) to continue performance under its premium financing agreement, and (iii) authorizing the Debtor's financial institutions to honor and process checks and transfers related to such insurance obligations. In support of this Motion, the Debtor relies upon and incorporates by reference the *Declaration of Michael G. Johnson in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith. In further support of this Motion, the Debtor respectfully represents as follows:

---

[1]    The last four digits of the Debtor's federal tax identification number are (6870).  The mailing address for the Debtor is 11620 Arbor Street, Suite 101, Omaha, Nebraska 68144.

[2]    Capitalized terms not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the case, the Debtor, property of the Debtor's estate and this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      The statutory and legal predicates for the relief requested in this Motion are sections 105, 362, 363, 1107, and 1108 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

6.      Established in 2016 and headquartered in Omaha, Nebraska, the Debtor provides underground utility locating and damage prevention services to support companies that conduct

underground construction and maintenance.  By providing detailed information on what lies beneath the surface, the Debtor is able to help protect communities from harms that could otherwise occur when parties, such as utility or other companies, dig underground.

7.      Specifically, the Debtor provides accurate, on-time damage prevention services to ensure its customers' valuable underground assets are protected.  These "811" locating services are tailored to the needs of each customer, and include handling emergency and real time notice locate requests, damage investigations (including testimonial support), extended locates, projects (including extraordinary projects), site surveillance, and route patrol and monitoring.

8.      Additional factual background regarding the Debtor, including its business operations, capital and debt structures, and the events leading to the filing of the chapter 11 case, is set forth in detail in the First Day Declaration, which is fully incorporated in this Motion by reference.

## INSURANCE POLICIES

9.      The Debtor maintains several insurance policies, a list of which is attached here as Exhibit 1 (each, an "Insurance Policy" and collectively, the "Insurance Policies")[3] through various insurers (the "Insurers").  The Debtor employs Equity Risk Partners ("ERP") as its insurance broker.  Maintenance of insurance coverage under the various Insurance Policies is essential to the continued operation of the Debtor's business and, moreover, is required under the

---

[3]      In addition to the Insurance Policies listed on Exhibit 1, the Debtor maintains other insurance policies and programs with respect to employee benefits including, without limitation, health, dental, disability, and life insurance.  These programs and policies are addressed in detail in the *Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing the Debtor to Pay Certain Prepetition Wages, Compensation, and Maintain and Continue Employee Benefits and Programs in the Ordinary Course; (II) Authorizing Banks to Honor and Process Checks and Transfers Related to Such Employee Obligations; and (III) Granting Related Relief*, filed contemporaneously herewith.  If the Debtor omitted any Insurance Policy from Exhibit 1, such omission shall not operate to exclude that policy from the coverage of this Motion or any order entered in connection with this Motion.

United States Trustee's Operating Guidelines for chapter 11 cases (the "Operating Guidelines"), the laws of the various states in which the Debtor operates, and certain of the Debtor's customer contracts and equipment leases.  Thus, the Debtor submits that it should be authorized, but not directed, to continue to pay premiums, claims, deductibles, taxes, charges, fees, and other obligations owed under or with respect to the Insurance Policies as such obligations come due in the ordinary course of the Debtor's business.

10.    The Debtor incurs approximately $1,450,000 in annual premiums relating to the Insurance Policies, including ERP's broker commission.  The significant Insurance Policies are summarized as follows:

(a)    Automobile Policy.  The Debtor maintains a fully insured automobile Insurance Policy with the National Fire & Marine Insurance Company (the "Automobile Policy").  The Automobile Policy covers liability arising out of the ownership, lease, and use of various automobiles in the ordinary course of the Debtor's business.  The Debtor incurs approximately $965,770 in the aggregate in annual premiums for the Automobile Policy. The Automobile Policy is covered by the Premium Financing Obligations (defined below).

(b)    General Liability Policy.  The Debtor maintains an Insurance Policy that covers general liability and excess liability that may arise in the ordinary course of the Debtor's various operations with Navigators Specialty Insurance Company (the "General Liability Policy").  The Debtor incurs approximately $41,715 in annual premiums for the Automobile Policy. The General Liability Policy is covered by the Premium Financing Obligations.

(c)    Employer Liability Policies.  The Debtor maintains Insurance Policies that cover workers' compensation claims and employers' liability with LM Insurance Corporation, Travelers Property Casualty Company of America, and another provider (each an "Employer Liability Policy" and collectively, the "Employer Liability Policies").[4]  The Debtor incurs

---

[4]    ERP is currently engaging one additional insurance carrier to provide an additional Employer Liability Policy in the state of Oklahoma.

approximately $67,000[5] in aggregate annual premiums for the Employer Liability Policies. The Employer Liability Policies are not covered by the Premium Financing Obligations and, instead are paid directly by the Debtor.

(d)     Commercial Equipment Policy. The Debtor maintains an Insurance Policy that covers property damage and losses related to equipment it owns and uses to provide on-site services (the "Commercial Equipment Policy"). The Commercial Equipment Policy is not covered by the Premium Financing Obligations and, instead is paid directly by the Debtor.

(e)     Directors & Officers Liability Policy. The Debtor maintains an Insurance Policy that covers directors' & officers' liability and related excess liability (the "Directors & Officers Liability Policy") with QBE Insurance Corporation. The Directors & Officers Liability Policy provides coverage for the Debtor and its directors and officers covers claims alleging wrongful acts by the board of directors and executive officers in their management of the company. The Debtor incurs approximately $34,640 in annual premiums for the Directors & Officers Liability Policy. The Directors & Officers Liability Policy is covered by the Premium Financing Obligations.

(f)     Professional & Indemnity Policy. The Debtor maintains an Insurance Policy with Lexington Insurance Company that covers liability for specific events not covered by other Insurance Policies, on a claims-made basis (the "Protection & Indemnity Policy"). The Debtor incurs approximately $159,088 in annual premiums to cover the Protection & Indemnity Policy. The Professional & Indemnity Policy is covered by the Premium Financing Obligations.

(g)     Cyber Liability Policy. The Debtor maintains an Insurance Policy with Underwriters at Lloyd's that covers liability in the event of a data breach or private information-related loss event. The Debtor incurs approximately $8,091 in annual premiums to cover the Cyber Liability Policy. The Cyber Liability Policy is covered by the Premium Financing Obligations.

(h)     Excess Liability Policy. The Debtor maintains an Insurance Policy with Aspen American Insurance Company that supplements the liability coverage provided by the General Liability Policy. The Debtor incurs approximately $140,000 in annual premiums to cover the Excess Liability

---

[5]     This amount includes the estimated aggregate annual premiums for the additional insurance carrier described in note 5, *supra*.

Policy.  The Excess Liability Policy is covered by the Premium Financing Obligations.

11.    After review of its records, the Debtor believes that $0 is owed in 2018 premiums to its Insurers under the Insurance Policies as of the Petition Date.  To the extent there are any outstanding prepetition amounts on account of the Insurance Policies, the Debtor requests that the Court authorize, but not direct, the Debtor to pay any such outstanding amounts in its discretion.  The Debtor believes that payment of the Prepetition Insurance Obligations (defined below) is necessary to ensure continued coverage under the Insurance Policies and to maintain good relationships with the Insurers.  The Debtor's maintenance of its relationships with the Insurers is critical to ensuring the continued availability of insurance coverage and reasonable pricing of such coverage for future policy periods.

12.    Further, in the ordinary course of business, the Debtor from time to time undergoes audits of its Insurance Policies, which may uncover payment deficiencies. Accordingly, by this Motion, the Debtor requests authority to pay any such undisputed prepetition amounts that are later determined to be due and owing on a postpetition basis, including any additional fees and costs imposed as a result of any such audit.

## PREMIUM FINANCING OBLIGATIONS AND PAYMENT OF PREMIUMS

13.    On January 28, 2019, consistent with past practice, the Debtor and AFS/IBEX Financial Services, Inc. ("AFS/IBEX") entered into a financing agreement to finance the premiums associated with the Debtor's Automobile Policy, General Liability Policy, Directors & Officers Liability Policy, Professional & Indemnity Policy, Cyber Liability Policy, and Excess Liability Policy (the "Premium Financing Agreement" or "PFA").  The total annual premiums that are financed through AFS/IBEX are approximately $1,349,303.50, minus a down payment of $135,381.85 (the "Down Payment").  As of the Petition Date, the Debtor had not remitted the

6

Down Payment to AFS/IBEX.  In addition to the Down Payment, the Debtor makes 10 monthly installment payments each in the amount of $123,741.21, pursuant to the PFA, with the first payment for the 2019 policy period due on January 31, 2019 (the "First Premium Financing Installment").  The Debtor requests that the Court authorize but not direct the Debtor's payment of the Down Payment, the First Premium Financing Installment, and any other amounts that come due under the PFA in an amount not to exceed $350,000 on an interim basis, and $500,000 on a final basis.

14.     In light of the importance of maintaining insurance coverage with respect to Debtor's business activities, the Debtor believes that it is in the best interest of its estate and creditors for this Court to authorize the Debtor to honor its obligations under the Insurance Policies ordinary course of business.  Further, in light of the timing of the payments due, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor's business.

## **RELIEF REQUESTED**

15.     By this Motion, the Debtor seeks entry of interim and final orders, substantially in the form attached to this Motion as Exhibit A and Exhibit B, respectively, pursuant to sections 105, 362, 363, 1107, and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004, authorizing the Debtor (i) to continue its Insurance Policies on an uninterrupted basis in accordance with the same practices and procedures in effect prior to the Petition Date and to renew its Insurance Policies or obtain replacement coverage, as needed in the ordinary course of business, without further Court approval, (ii) pay (a) all prepetition insurance obligations for all undisputed premiums, claims, deductibles, administrative fees, broker fees, and other obligations relating to the Insurance Policies, as applicable, (collectively, the "Prepetition Insurance

Obligations") and (b) postpetition insurance obligations for all undisputed premiums, claims, deductibles, administrative fees, broker fees, and other obligations relating to the Insurance Policies, as applicable (collectively, the "Postpetition Insurance Obligations," and together with Prepetition Insurance Obligations, the "Insurance Obligations"), and (iii) continue to perform under the PFA.[6] Such relief, including any and all authorizations or payments requested herein, shall be subject to and implemented in accordance with the provisions of any orders of this Court approving any use of cash collateral by the Debtor, including any budget in connection therewith.

16.     In addition, the Debtor requests that the Court authorize and direct the Debtor's banks to receive, process, honor and pay all checks and fund transfers on account of the Insurance Obligations that had not been honored and paid as of the Petition Date, and authorize the Debtor's banks and financial institutions to rely on the representations of the Debtor as to which checks and fund transfers should be honored and paid in respect of the Insurance Obligations, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

**A.     Payment of the Insurance Obligations and Renewal of the Insurance Policies Is Necessary to Comply with United States Trustee Requirements.**

17.     Maintenance of insurance coverage under the various Insurance Policies is required under the Operating Guidelines, the laws of the various states in which the Debtor operates, and certain of the Debtor's various service agreements and equipment leases.  *See* Operating Guidelines at ¶ 3 (requiring maintenance of appropriate insurance coverage).  Given these requirements, the maintenance of the Debtor's Insurance Policies—through payment of the

---

[6]     To the extent that the Insurance Policies or related agreements may be deemed executory contracts within the meaning of section 365 of the Bankruptcy Code, the Debtor does not at this time seek authority to assume such contracts.

8

Insurance Obligations and Premium Financing Obligations and the renewal, revision, extension, supplementation, change, or entering into new insurance coverage, as needed in the Debtor's business judgment without further order of the Court—is necessary and essential to the Debtor's operation of its business during this chapter 11 case.  In addition, the Debtor is required to maintain insurance under many of its agreements, including its equipment leases and customer contracts.  Because such agreements are the source of the vast majority of the Debtor's liquidity and revenue, the Debtor's inability to maintain insurance coverage would be disastrous and could doom the Debtor's prospects for a successful going concern sale to the detriment of all stakeholders.

**B.      Payment of the Insurance Obligations Is Authorized Under Sections 1107(a) and 1108 of the Bankruptcy Code.**

18.      Payment of the Insurance Obligations and Premium Financing Obligations is also authorized under sections 1107 and 1108 of the Bankruptcy Code.  The Debtor, operating its business as debtor in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries, in that the debtor in possession conserves the bankruptcy estate and operates the business for the benefit of its creditors.  *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 474 (3d Cir. 1998) (citation omitted); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *In re CoServ*, 273 B.R. at 497.

19.      Payment of the Insurance Obligations and Premium Financing Obligations, and the renewal, revision, extension, supplementation, change or entering into new insurance policies, as needed in the Debtor's business judgment, are necessary to ensuring the Debtor's ongoing operations.  As noted above, insurance coverage is required by the Operating Guidelines.

9

Moreover, as fiduciary for the bankruptcy estate, the Debtor could be violating its duties if it in any way jeopardizes the coverage provided under the Insurance Policies.

20.     As described above, non-payment of the Insurance Obligations and the Premium Financing Obligations could result in cancellation of the Insurance Policies, in which case the Debtor would not only be in violation of the Operating Guidelines, in violation of the laws of various states in which the Debtor operates and in breach of various contractual agreements, but also may be unable to find alternative insurance coverage, or find such alternatives only at a much higher cost than the Debtor currently incurs.  Therefore, the potential harm and economic disadvantage that would stem from the cancellation of the Insurance Policies, and failure to renew the Insurance Policies or revise, extend, supplement, change or enter into new insurance arrangements as needed in the Debtor's business judgment, are grossly disproportionate to the amount of the Insurance Obligations and the Premium Financing Obligations, and the costs to renew, revise, extend, supplement, change or enter into new insurance coverage.

21.     Accordingly, to meet its fiduciary duties as debtor in possession under Bankruptcy Rules 1107(a) and 1108, the Debtor must be authorized to pay the Insurance Obligations and the Premium Financing Obligations, and to renew, revise, extend, supplement, change or enter into new Insurance Policies, as needed in its business judgment.  The Debtor thus seeks authority to pay all Insurance Obligations and the Premium Financing Obligations that may become due with respect to the Insurance Policies if such payment is necessary in the Debtor's business judgment or in order to avoid cancellation or interruption of insurance coverage.  In addition, the Debtor seeks authority to renew, revise, extend, supplement, change or enter into new Insurance Policies, as needed in its business judgment.

RLF1 20729647v.2

**C.**     **Payment of the Premium Financing Obligations Is Warranted Under Section 362 and 363 of the Bankruptcy Code.**

22.     Pursuant to the Premium Financing Obligations, the Debtor assigned to AFS/IBEX all unearned premiums, returned premiums, dividend payments, and loss payments under the Automobile Policy, General Liability Policy, Directors & Officers Liability Policy, Professional & Indemnity Policy, Cyber Liability Policy, and Excess Liability Policy as security for payment of all obligations of the Debtor under the Premium Financing Obligations (the "Unearned Premiums").  Security interests created by premium financing agreements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  *See, e.g., In re Alabama Aircraft Indus., Inc., No. 11-10452(PJW), 2013 WL 6332688, at \*3* (Bankr. D. Del. Dec. 5, 2013)*; TIFCO, Inc. v. U.S. Repeating Arms Co.* (*In re U.S. Repeating Arms Co.*), 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit Corp.* (*In re Auto-Train Corp.*), 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981).  As a secured creditor, AFS/IBEX would be entitled to seek relief from the automatic stay, either to cancel the financed policies in accordance with the terms of the PFA, or to seek adequate protection of its investment.  *See In re Universal Motor Express, Inc.*, 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay).

23.     As secured creditors, insurance premium financiers are entitled to adequate protection of the value of their security to protect them against diminution in the value of their collateral.  Adequate protection may take many forms, including relief from the automatic stay and authority to apply unearned premiums to the outstanding debt.  Where the unearned premiums have diminished to less than the amount of the outstanding debt, cash payments may

11

suffice as adequate protection of the insurance premium financier's interest. *See TIFCO*, 67 B.R. at 999-1000.

24.      Accordingly, AFS/IBEX may be entitled to adequate protection of its interests in the Unearned Premiums under section 363(e) of the Bankruptcy Code.  The Debtor's failure to provide such adequate protection – for example by failing to pay the ongoing installments due under the PFA– may constitute cause under section 362(d) of the Bankruptcy Code for AFS/IBEX to obtain relief from the automatic stay and terminate the financed policies.

25.      In addition, under the terms of the PFA, AFS/IBEX may cancel the financed policies for non-payment and may accelerate, and declare due and payable the entire unpaid premiums upon the Debtor's failure to pay the monthly Premium Financing Obligations. Because the Debtor is required to maintain insurance coverage during the chapter 11 case, the cancellation of these policies would be particularly disastrous. *See* Operating Guidelines ¶ 3.

26.      Even if the Debtor was successful in preventing AFS/IBEX from lifting the automatic stay to pursue its remedies, such litigation likely would be contested and costly to the Debtor's estate and would distract the Debtor and its employees from its efforts towards consummating a restructuring.  More importantly, if unsuccessful in the automatic stay litigation, the Debtor may be unable to find a carrier willing to provide it similar insurance coverage or a company willing to finance the premiums without charging significantly higher premiums and fees.

27.      Courts in this district have routinely granted the same or similar relief as requested in this Motion to chapter 11 debtors. *See, e.g., In re Appvion, Inc.,* Case No. 17-12802 (KJC) [D.I. 59] (Bankr. D. Del. Oct. 3, 2017) (order authorizing the debtors continue their insurance policies and pay prepetition and postpetition obligations)*; In re True Religion Apparel,*

12

*Inc.*, Case No. 17-11460 (CSS) [D.I. 436] (Bankr. D. Del. Sept. 14, 2017) (same); *In re Katy*

*Indus., Inc.*, Case No. 17-11101 (KJC) [D.I. 148] (Bankr. D. Del. Jun. 16, 2017) (same); *In re*

*Panda Temple Power, LLC*, Case No. 17-10839 (LSS) [D.I. 41] (Bankr. D. Del. Apr. 20, 2017)

(same); *In re Rupari Holding Corp.*, Case No. 17-10793 (KJC) [D.I. 41] (Bankr. D. Del. Apr. 10,

2017) (same); *In re Golfsmith Int'l Holdings, Inc.*, Case No. 16-12033 (LSS) [D.I. 261] (Bankr.

D. Del. Oct. 13, 2016) (same); *In re VSI Liquidating Inc.* (*f/k/a Vertellus Specialties Inc.*) Case

No. 16-11290 (CSS) [D.I. 152] (Bankr. D. Del. Jun. 24, 2016) (same); *In re Abeinsa Holding*

*Inc.*, Case No. 16-10790 (KJC) [D.I. 130] (Bankr. D. Del. Apr. 27, 2016) (same).[7]

**D.**     **Continuing the Insurance Policies and Paying All Undisputed Obligations in Respect Thereof Is Necessary to Preserve the Value of the Debtor's Estate.**

28.     Furthermore, section 105(a) of the Bankruptcy Code empowers the Court to

"issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize

the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of

the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr.

S.D.N.Y. 1989); *see also Czyewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (noting that

courts are authorized to approve orders allowing payment of prepetition claims, which is

necessary for the debtors to have a successful reorganization). "Under 11 U.S.C. § 105 the court

can permit pre-plan payment of a pre-petition obligation when essential to the continued

---

[7]     The referenced orders are voluminous in nature and, therefore, are not attached to this Motion; however, in accordance with Local Rule 7007-2, as made applicable to main cases by the Court's General Chambers Procedures, the Debtor's proposed counsel has copies of each order and will make them available to the Court or to any party that requests them. Additionally, the Orders are available on the Court's CM/ECF PACER site at the cited docket index numbers and on the dates specified above.

operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

29.    In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of such [indispensable] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to . . . [the commencement of the bankruptcy case] is essential to the continued operation of the . . . [business] during . . . [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits). The Supreme Court recently recognized and approved this consistent federal practice in *Czyewski v. Jevic Holding Corp.* 137 S. Ct. at 985.

30.    The "doctrine of necessity" functions in chapter 11 as a mechanism by which the Bankruptcy Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Lehigh & N. E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that court may authorize payment of prepetition claims if such payment was essential to continued operation of debtor); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing existence of judicial power to authorize trustees to pay

claims for goods and services that are indispensably necessary to debtors' continued operation). The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with the payment of prepetition claims.  The court in *In re Structurlite Plastics Corp.* indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under § 105(a) to authorize payment of pre-petition claims where such payment is necessary to ˙permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *Chateaugay*, 80 B.R. at 287).  The court stated that "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932.  The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11 "facilitating the continued operation and rehabilitation of the debtor". *Ionosphere Clubs*, 98 B.R. at 176.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested in this Motion.

**E.     Financial Institutions Should Be Authorized to Honor and Process Related Checks and Transfers.**

31.     The Debtor also requests that all applicable banks and other financial institutions (the "Banks") be authorized to (a) receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to the claims that the Debtor requests authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, and (b) rely on the Debtor's designation of any particular check as approved by this Court's order.

15

## INTERIM APPROVAL SHOULD BE GRANTED
## AND A FINAL HEARING SHOULD BE SCHEDULED

32.     The Debtor requests that the Court conduct a preliminary hearing on the Motion and, on an interim basis, grant the relief requested in this Motion.  In addition, the Debtor respectfully requests that the Court schedule a final hearing on this Motion at the Court's convenience following entry of an interim order.  Such relief is necessary in order to maintain and preserve the ongoing operations of the Debtor.

33.     Any Insurer that does not object to the Debtor's maintenance of its Insurance Policies by the applicable objection deadline set for a final hearing on the Motion is directed to continue to maintain the Debtor's Insurance Policies in the ordinary course.

## RESERVATION OF RIGHTS

34.     Nothing contained in this Motion is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's or any party in interest's rights to dispute any claim; or (iii) an approval or assumption of any agreement under section 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought in this Motion, any payment made pursuant to the Interim Order or Final Order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to dispute such claim at a later date.

## REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

35.     Bankruptcy Rule 6003(b) provides that to the extent "relief is necessary to avoid immediate and irreparable harm," a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days after the Petition Date.  Fed. R. Bankr. P. 6003(b).  As described in this Motion and in the First Day Declaration, continuation of the Insurance Policies is essential to the Debtor's business operations.  The

RLF1 20729647v.2

failure to maintain the Insurance Policies would have immediate and negative consequences to the Debtor's business operations to the detriment and prejudice of all parties in interest. Accordingly, the Debtor submits that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and, therefore, Bankruptcy Rule 6003(b) is satisfied.

36.     To implement the foregoing immediately, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  The Debtor further requests waiver of the stay of the order granting a motion for relief from the automatic stay under Bankruptcy Rule 4001(a).

### NOTICE

37.     Notice of this Motion shall be provided to: (i) the Office of the United States Trustee for the District of Delaware (Attn:  Linda Richenderfer, Esq.); (ii) the United States Attorney for the District of Delaware; (iii) the parties on the Debtor's list of twenty (20) largest creditors; (iv) the DIP Lenders; (v) DLA Piper LLP (US), as counsel to the DIP Lenders; (vi) the Internal Revenue Services (vii) the Banks; (viii) the Insurance Carriers; (ix) AFS/IBEX; (x) ERP; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties as required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtor respectfully submits that no further notice of this Motion is required.

RLF1 20729647v.2

## <u>NO PRIOR REQUEST</u>

38.    No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter an interim order, substantially in the form attached hereto as <u>Exhibit A</u> granting the relief requested in this Motion, (ii) schedule a final hearing on the Motion and thereafter enter a final order substantially in the form attached hereto as <u>Exhibit B</u>, and (iii) grant such other and further relief as the Court may deem proper.

Dated: January 30, 2019
       Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**

<u>/s/  *Daniel J. DeFranceschi*</u>
Daniel J. DeFranceschi (No. 2732)
Russell C. Silberglied (No. 3462)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email:  defranceschi@rlf.com
        silberglied@rlf.com
        heath@rlf.com
        shapiro@rlf.com

*Proposed Counsel to the Debtor and Debtor in Possession*

**<u>Exhibit A</u>**

**(Proposed Interim Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------x
                                    :

In re:                       :   Chapter 11
                                      :

     CONSOLIDATED INFRASTRUCTURE   :   Case No. 19-_____ (___)
     GROUP, INC.,[1]                :
                                      :

           Debtor.          :   **Re: D.I. No. ___**
-------------------------------------------------------------x

**INTERIM ORDER AUTHORIZING THE DEBTOR TO (I) CONTINUE ITS
INSURANCE POLICIES, (II) PAY PREPETITION AND POSTPETITION
OBLIGATIONS IN RESPECT THEREOF, AND (III) CONTINUE
PERFORMANCE UNDER THE PREMIUM FINANCING AGREEMENT**

This matter coming before the Court on the *Motion of Debtor for Entry of Interim and Final Orders Authorizing the Debtor to (I) Continue Its Insurance Policies, (II) Pay Prepetition and Postpetition Obligations in Respect Thereof, and (II) Continue Performance Under the Premium Financing Agreement* (the "Motion")[2], filed by the above-captioned debtor (the "Debtor"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion being adequate and appropriate under the particular circumstances; the Court having reviewed the Motion and the First Day Declaration and having

---

[1]     The last four digits of the Debtor's federal tax identification number are (6870).  The mailing address for the Debtor is 11620 Arbor Street, Suite 101, Omaha, Nebraska 68144.

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

considered the statements of counsel and the evidence adduced with respect to the Motion at the hearing; after due deliberation, and good and sufficient cause having been shown,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtor is authorized, but not required, to pay, in its sole discretion, all prepetition Insurance Obligations, including those Insurance Obligations that were due and payable as of the Petition Date, or will become due and payable prior to entry of a final order on the Motion, in an amount not to exceed $350,000 in aggregate.

3.      The Debtor is authorized, but not directed, to honor all prepetition and postpetition commitments owed in connection with the Insurance Policies, attached to this Interim Order as Exhibit 1, including all Premium Financing Obligations and to enter into new premium financing agreements with any other premium financing provider as needed.

4.      The Debtor is authorized and empowered to maintain its Insurance Policies without interruption on the same basis and to the extent consistent with the practices and procedures that were in effect prior to the Petition Date.

5.      Consistent with the foregoing, the Debtor is authorized, but not directed, to maintain and administer its Employer Liability Policies, among others, in the ordinary course of business and consistent with past practice and honor and pay all claims and other costs and expenses related thereto whether arising prior to or after the Petition Date.

6.      The Debtor is hereby authorized, but not directed to pay any such undisputed prepetition amounts that are later determined to be due and owing as a result of an audit, including any additional fees and costs imposed as a result of any audit.

2

7.      Without further order of this or any other Court, the Debtor is authorized to honor its Postpetition Insurance Obligations under the Insurance Policies and to renew the existing Insurance Policies or enter into new insurance arrangements in the ordinary course of business, as may be required as the annual terms of existing arrangements expire.

8.      The Debtor's banks and financial institutions shall be and hereby are authorized and directed to receive, process, honor and pay all checks and fund transfers on account of the Insurance Obligations that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.  The Debtor's banks and other financial institutions are authorized to rely on the representations of the Debtor as to which checks and fund transfers are authorized to be honored and paid pursuant to this Interim Order.

9.      This Interim Order is without prejudice to the rights of the Debtor and its estate to contest the validity, priority or amounts of any Insurance Obligations on any grounds it deems appropriate, and any rights of the Debtor and its estate with respect to such matters shall be reserved.

10.     To the extent that any Insurance Program or any related contract or agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Interim Order nor any payments made in accordance with this Interim Order shall constitute the postpetition assumption of any such Insurance Program or any related contract or agreement pursuant to section 365 of the Bankruptcy Code.

11.     Notwithstanding the relief granted in this Interim Order and any actions taken hereunder, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Interim Order shall constitute, nor is it intended to constitute:  (a) an admission as to the

3

validity or priority of any claim or lien against the Debtor, (b) a waiver of the Debtor's rights to subsequently dispute such claim or lien, (c) an undertaking, obligation, or commitment to pay any claims hereunder, or (d) the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

12.     Any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.   The Debtor retains the sole discretion whether to pay any claim that the Court authorizes under this proposed Interim Order.

13.     The  final  hearing  (the  "Final  Hearing")  on  the  Motion  shall  be  held  on _____ __, 2019 at ___:___ __.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion (each, an "Objection") shall be filed on or before 4:00 p.m. prevailing Eastern Time on _____ __, 2019, and served on the following parties via first class and electronic mail, as applicable:  (i) the Debtor, Consolidated Infrastructure Group, Inc., 11620 Arbor Street, Suite 101, Omaha, Nebraska 68144 (Attn: Mike Johnson); (ii) proposed counsel to the Debtor, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:  Daniel J. DeFranceschi, Esq. [defranceschi@rlf.com]); (iii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Lockbox 35, Wilmington, Delaware 19801 (Attn:  Linda Richenderfer, Esq. [linda.richenderfer@usdoj.gov]); (iv) counsel to any statutory committee appointed in this chapter 11 case; and (v) counsel for the DIP Lenders, DLA Piper LLP (US), 444 W. Lake Street, Suite 900, Chicago, Illinois 60606 (Attn: Richard A. Chesley, Esq. [richard.chesley@dlapiper.com] and Jamila Justine Willis, Esq. [jamila.willis@dlapiper.com]), and DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801

4

(Attn:  R.  Craig  Martin,  Esq.  [craig.martin@dlapiper.com]  and  Maris  Kandestin,  Esq. [maris.kandestin@dlapiper.com]).  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

14.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

15.     The requirements of Bankruptcy Rule 6004(a) are waived.

16.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and provisions of this Interim Order shall be immediately effective and enforceable upon its entry.

17.     The Debtor is hereby authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order.

18.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Interim Order.

Dated: _____, 2019
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

5

**Exhibit B**

**(Proposed Final Order)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
|  |  |
|---|---|
| In re: | : Chapter 11 |
| | : |
| CONSOLIDATED INFRASTRUCTURE | : Case No. 19-_____ (___) |
| GROUP, INC.,[1] | : |
| | : |
| Debtor. | : **Re: D.I. Nos. ___&____** |

-------------------------------------------------------------x

## FINAL ORDER AUTHORIZING THE DEBTOR TO (I) CONTINUE ITS INSURANCE POLICIES, (II) PAY PREPETITION AND POSTPETITION OBLIGATIONS IN RESPECT THEREOF, AND (III) CONTINUE PERFORMANCE <u>UNDER THE PREMIUM FINANCING AGREEMENT</u>

This matter coming before the Court on the *Motion of Debtor for Entry of Interim and Final Orders Authorizing the Debtor to (I) Continue Its Insurance Policies, (II) Pay Prepetition and Postpetition Obligations in Respect Thereof, and (III) Continue Performance Under the Premium Financing Agreement* (the "<u>Motion</u>")[2], filed by the above-captioned debtor (the "<u>Debtor</u>"); the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion being adequate and

---

[1]      The last four digits of the Debtor's federal tax identification number are (6870).  The mailing address for the Debtor is 11620 Arbor Street, Suite 101, Omaha, Nebraska 68144.

[2]      Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

Case 19-10165-BLS    Doc 8    Filed 01/30/19    Page 28 of 32

appropriate under the particular circumstances, and no other or further notice need to be provided; the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the interim hearing; and the Court having granted the interim relief requested in the Motion; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted in this Final Order; and any objections to the requested relief having been withdrawn or overruled;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED, on a final basis, as set forth in this Final Order.

2.      The Debtor is authorized, but not required, to pay, in its sole discretion, all Insurance Obligations, including those Insurance Obligations that were due and payable, or are related to, the period prior to the Petition Date, in an amount not to exceed $500,000 in the aggregate.

3.      The Debtor is authorized, but not directed, to honor all prepetition and postpetition commitments owed, if any, in connection with the Insurance Policies, attached to this Final Order as <u>Exhibit 1</u>, including all obligations arising under the Premium Financing Obligations, and to enter into new premium financing arrangements with any other premium financing provider as needed.

4.      The Debtor is authorized and empowered to maintain its Insurance Policies without interruption on the same basis and to the extent consistent with the practices and procedures that were in effect prior to the Petition Date.

5.      Consistent with the foregoing, the Debtor is authorized, but not directed, to maintain and administer its Employer Liability Policies, among others, in the ordinary course of

RLF1 20729647v.2

business and consistent with past practice and honor and pay all claims and other costs and expenses related thereto whether arising prior to or after the Petition Date.

6.     To the extent prosecution by the Debtor's employees of its valid workers' compensation claims is barred by the automatic stay provision of section 362 of the Bankruptcy Code, the stay shall be lifted solely to permit such employees to liquidate its workers' compensation claims in the appropriate judicial or administrative forum.

7.     The Company is hereby authorized, but not directed to pay any undisputed prepetition amounts that are later determined to be due and owing as a result of an audit, including any additional fees and costs imposed as a result of any audit.

8.     Without further order of this Court, the Debtor is authorized to honor its Postpetition Insurance Obligations under the Insurance Policies and to renew the existing Insurance Policies or enter into new insurance coverage arrangements and related premium financing agreements in the ordinary course of business, as may be required as the annual terms of existing arrangements expire.

9.     The Debtor's banks and financial institutions shall be and hereby are authorized and directed to receive, process, honor and pay all checks and fund transfers on account of the Insurance Obligations that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.  The Debtor's banks and other financial institutions are authorized to rely on the representations of the Debtor as to which checks and fund transfers are authorized to be honored and paid pursuant to this Final Order.

10.     This Final Order is without prejudice to the rights of the Debtor and its estate to contest the validity, priority, or amounts of any Insurance Obligations on any grounds it deems

3

appropriate, and any rights of the Debtor and its estate with respect to such matters shall be reserved.

11.     To the extent that any Insurance Program or any related contract or agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Final Order nor any payments made in accordance with this Final Order shall constitute the postpetition assumption of any such Insurance Program or any related contract or agreement pursuant to section 365 of the Bankruptcy Code.

12.     Notwithstanding the relief granted in this Final Order and any actions taken hereunder, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Final Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity or priority of any claim or lien against the Debtor, (b) a waiver of the Debtor's rights to subsequently dispute such claim or lien, (c) an undertaking, obligation, or commitment to pay any claims hereunder, or (d) the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

13.     Any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently, nor as a limitation on any claim.  The Debtor retains the sole discretion whether to pay any claim that the Court authorizes under this proposed Final Order.

14.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and provisions of this Final Order shall be immediately effective and enforceable upon its entry.

15.     The Debtor is hereby authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order.

RLF1 20729647v.2

16.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Final Order.

Dated: _____, 2019
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

### (Insurance Schedule)

| INSURERS | TYPE OF INSURANCE POLICY | LAST 4 DIGITS OF POLICY NUMBER | EXPIRATION DATE |
|---|---|---|---|
| Navigators Specialty Insurance Company | General Liability Policy | 2NIC | December 31, 2019 |
| Twin City Fire Insurance Company | Commercial Equipment Policy | 4376 | December 31, 2019 |
| National Fire & Marine Insurance Company | Automobile Policy | 2880 | December 31, 2019 |
| Aspen American Insurance Company | Excess Liability | DR18 | December 31, 2019 |
| LM Insurance Corporation | Employer Liability Policy (Iowa) | 5539 | December 31, 2019 |
| Travelers Property Casualty Company of America | Employer Liability Policy (Indiana) | 4560 | December 31, 2019 |
| Travelers Property Casualty Company of America | Employer Liability Policy (Nebraska) | 4560 | December 31, 2019 |
| Lexington Insurance Company | Professional & Indemnity Policy | 0456 | December 31, 2019 |
| Underwriters at Lloyd's | Cyber Liability Policy | 2979 | December 31, 2019 |
| QBE Insurance Corporation | Directors and Officers Liability Policy | 5233 | December 31, 2019 |