

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------------x
                                    :
In re:                              :  Chapter 11
                                    :
CONSOLIDATED INFRASTRUCTURE GROUP,  :  Case No. 19-10165 (BLS)
INC.,¹                              :
                                    :  Re: D.I. No.: 9
                   Debtor           :
-----------------------------------------------------------x
```

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO (A) OBTAIN**
**POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 364(c)(2),**
**AND 364(e), AND (B) GRANT SENIOR LIENS WITH RESPECT THERETO;**
**(II) MODIFYING THE AUTOMATIC STAY TO THE EXTENT NECESSARY;**
**(III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Consolidated Infrastructure Group, Inc. (the "**Debtor**"), as borrower (the "**Borrower**"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Case**"), pursuant to Bankruptcy Code sections 105, 362, 364(c)(2) and 364(e), Bankruptcy Rules 2002, 4001, 6003, and 6004, and Rule 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking entry of an interim order (this "**Interim Order**") and a final order (the "**Final Order**") authorizing the Debtor to borrow funds under the DIP Facility, as set forth in the DIP Term Sheet (together with this Interim Order and the Final Order, the "**DIP Facility Documents**") in an aggregate principal amount up to $3,000,000 and, prior to a final hearing on the Motion (the "**Final Hearing**"), borrow up to $1,000,000 on an interim basis pursuant to the terms and conditions of the DIP Term Sheet attached hereto as <u>Exhibit 1</u>, modifying the automatic stay to the extent necessary to grant the

---

¹  The last four digits of the Debtor's federal tax identification number are (6870).  The mailing address for the Debtor is 11620 Arbor Street, Omaha, Nebraska 68144.

²  Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the Motion.

DIP Lenders the security interests, liens and secured claims set forth under the DIP Facility; and scheduling the Final Hearing; and the Court having considered the Motion, the exhibits attached thereto, the DIP Term Sheet, and the evidence submitted or adduced and the arguments of counsel made at the hearing; and the *Declaration of Michael G. Johnson in Support of Chapter 11 Petition and First Day Pleadings* (the "**First Day Declaration**"); and notice of the hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local Rules 2002-1, 4001-1(a), 5005-1 and 9013-1(m); and the hearing to consider the interim relief requested in the Motion (the "**Interim Hearing**") having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

IT IS FOUND AND DETERMINED, that:

A.      *Petition Date*.  On January 30, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") commencing the Case.

B.      *Debtor in Possession*.  The Debtor is continuing in the management and operation of its business and properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Case.

C.    *Jurisdiction and Venue*.    The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought in the Motion are sections 105, 362, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003, and 6004 and the applicable Local Rules.

D.    *Committee Formation*.    As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed any statutory committee (each, a "**Statutory Committee**") in the Case.

E.    *Findings Regarding Post-Petition Financing*.

(i)    *Good cause*. Good cause has been shown for the entry of this Interim Order.

(ii)    *Request for Post-Petition Financing*.  The Debtor seeks authority to borrow funds under the DIP Term Sheet.  The DIP Lenders shall have no obligation to make loans or advances under the DIP Facility except to the extent required under the DIP Facility Documents and no obligation to waive any conditions required thereunder.

(iii)    *Need for Post-Petition Financing*.  The Debtor's need to obtain credit on the terms set forth in the DIP Term Sheet is immediate and critical in order to enable the Debtor to continue operations and to administer and preserve the value of its estate.  The ability of the Debtor to finance its operations, maintain business relationships, pay employees, protect the value of its assets and otherwise finance its operations requires

the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, creditors and stakeholders, and the possibility for maximizing the value of its businesses.  The Debtor does not have sufficient available sources of working capital and financing to operate its business or to maintain its properties in the ordinary course of business without the DIP Facility.  Consummating the financing contemplated by the DIP Term Sheet pursuant to the terms of this Interim Order therefore is in the best interests of the Debtor's estate.

(iv)    *No Credit Available on More Favorable Terms*.  Based on the Debtor's representations in the First Day Declaration and the record of the Interim Hearing, given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to reasonably obtain post-petition financing from sources other than the DIP Lenders on terms more favorable than those set forth in the DIP Facility Documents.  Based on the Debtor's representations in the First Day Declaration and the record of the Interim Hearing, the Debtor has been unable to reasonably obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  Based on the Debtor's representations in the First Day Declaration and the record of the Interim Hearing, financing on a post-petition basis is not otherwise available without granting the DIP Lenders perfected security interests in and liens on (each as provided herein) all of the Debtor's existing and after-acquired assets with the priorities set forth herein and the other protections set forth in this Interim Order.

(v)    *Use of Proceeds*.

a.    As a condition to entry into the DIP Facility Documents and the extensions of credit under the DIP Facility, the DIP Lenders require, and the Debtor has agreed, that proceeds of the DIP Facility shall be used in accordance with the terms of the DIP

4

Facility Documents, including the Approved Budget, attached hereto as <u>Exhibit 2</u>, which shall be subject to (x) reasonable variances permitted by the DIP Lenders (the "**Permitted Variance**"), (y) this Interim Order (or the Final Order as applicable), and (z) the Carve-Out.

b.    The Debtor shall not directly or indirectly pay any expense or other disbursement other than those set forth in the Approved Budget (other than expenses with respect to the Carve-Out) outside of the Permitted Variance or otherwise permitted or directed by an order of the Court.

c.    The proceeds of the DIP Facility shall be used solely as provided in the DIP Term Sheet, including, to the extent provided therein, (i) to provide working capital and letters of credit from time to time to the extent set forth in the Approved Budget; (ii) for general corporate purposes of the Debtor to the extent set forth in the Approved Budget; (iii) subject to the Approved Budget (other than with respect to the Carve-Out) or any order governing the compensation of professionals retained in this Case, for payment of costs and administration of the Case; and (iv) for the payment of such other prepetition obligations in accordance with "first day" orders, which orders shall be in form and substance reasonably satisfactory to the DIP Lenders and approved by the Court, in each case in a manner consistent with the Approved Budget and the terms and conditions contained herein.

(vi)    *Willingness to Provide Financing.* The DIP Lenders have indicated a willingness to provide financing to the Debtor subject to the entry of this Interim Order, and conditioned upon the entry of the Final Order, including findings that such financing is essential to the Debtor's estates, that the DIP Lenders are extending credit to the Debtor as set forth in the DIP Facility Documents in good faith, and that the DIP Lenders' claims, security interests, liens, rights, and other protections will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order, the Final Order or any other order.  As a condition to the entry into the DIP Facility Documents and the extension of credit under the DIP Facility, the Debtor, the DIP Agent

5

and the DIP Lenders have agreed that proceeds of Collateral and all payments and collections received by the Debtor shall be applied solely as set forth in the DIP Facility Documents.

(vii)    *Business Judgment and Good Faith Pursuant to Section 364(e).* Based on the Debtor's representations in the First Day Declaration and the record of the Interim Hearing, the extension of credit under the DIP Facility and the DIP Facility Documents, including the DIP Term Sheet, is fair, reasonable, and the best available to the Debtor under the circumstances, reflect the Debtor's exercise of prudent business judgment, are supported by reasonably equivalent value and consideration, and were entered into at arm's-length, under no duress, and without undue influence. Based on the Debtor's representations in the First Day Declaration and the record of the Interim Hearing, the DIP Facility and the DIP Facility Documents, including the DIP Term Sheet, were negotiated in good faith and at arm's length among the Debtor and the DIP Lenders, under no duress, and without undue influence, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility and all documents related to any and all transactions contemplated by the foregoing. Any credit to be extended as set forth in the DIP Facility Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Lenders are therefore entitled to the protections and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

6

(viii)    *Marshalling*. Subject to the entry of the Final Order, in light of the Approved Budget covering all administrative costs projected by the Debtor, the DIP Lenders are entitled to a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

(ix)    *Final Hearing*. At the Final Hearing, the Debtor will seek final approval of the proposed post-petition financing arrangements pursuant to the Final Order, which shall be in form and substance acceptable to the DIP Lenders. Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order and no further notice, except as provided by this Interim Order, shall be required.

(x)    *Immediate Entry*. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Bankruptcy Rule 4001-2(b). The authorization granted herein on an interim basis to enter into the DIP Facility Documents, and to borrow under the DIP Facility is necessary to avoid immediate and irreparable harm to the Debtor and its estates during the period (the "**Interim Period**") beginning on the date hereof through and including the earliest to occur of (i) the date of the entry of the Final Order by this Court and (y) the Termination Date (as defined below). This Court concludes that the entry of this Interim Order is in the best interests of the Debtor and its estates and creditors because it will, among other things, allow the Debtor to maximize the value of their assets.

(xi)    *Notice*. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee; (ii) the United States Attorney for the District of Delaware; (iii) the Internal

Revenue Service; (iv) the parties included on the Debtor's consolidated list of twenty (20) largest unsecured creditors; (v) the DIP Lenders; (vi) counsel to the DIP Lenders; (vii) financial institutions where the Debtor holds bank accounts; (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (ix) Automotive Rentals, Inc. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and the Interim Hearing constitutes appropriate notice thereof and complies with Bankruptcy Rules 4001(c) and the Local Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED AND ADJUDGED, that:

1.      Motion Approved.  The Motion is granted on an interim basis in accordance with the terms of this Interim Order.

2.      Objections Overruled.  All objections to and reservations of rights with respect to the Motion and to the entry of this Interim Order to the extent not withdrawn or resolved are hereby overruled on the merits in their entirety or, to the extent applicable, deferred to the Final Hearing.

**DIP Facility Authorization**

3.      Authorization of the DIP Facility Documents.  The Debtor is hereby authorized to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP Term Sheet and the other DIP Facility Documents to be delivered pursuant hereto or thereto or in connection herewith or therewith. The Borrower is hereby authorized to borrow money under the DIP Term Sheet, on an interim basis, and request extensions of credit under the DIP Facility in accordance

RLF1 20736081v.1

with the terms of this Interim Order and the DIP Term Sheet, *provided* that during the Interim Period an aggregate principal amount of up to $1,000,000 may be borrowed.

4.    <u>Authorized Action</u>.  In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents that may be necessary or required for performance by the Debtor under the DIP Term Sheet and the other DIP Facility Documents and the creation and perfection of the DIP Liens described in, provided for and perfected by this Interim Order, the DIP Term Sheet and the DIP Facility Documents.  Subject to paragraph 10, the Debtor is hereby authorized to pay, in accordance with this Interim Order, the principal, interest, expenses and other amounts described in the DIP Facility Documents as such become due and without need to obtain further Court approval, including, without limitation, the fees and disbursements of the DIP Lenders' attorneys, advisers, accountants and other consultants.  All fees, if any, shall be fully earned upon entry of this Interim Order and payable in accordance with the DIP Facility Documents.

5.    <u>Validity of DIP Obligations</u>.  Upon entry of this Interim Order and execution and delivery, the DIP Term Sheet shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estates in accordance with its terms, and subject to the terms of this Interim Order.  The DIP Term Sheet and this Interim Order constitute and evidence the validity and binding effect of the obligations thereunder of the Debtor, which obligations shall be enforceable, jointly and severally, against the Debtor, its estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Case or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case (a "**Successor Case**").  No obligation, payment, transfer, or grant of a security or other interest to the DIP Lenders under the DIP Facility Documents or this Interim Order shall be stayed,

RLF1 20736081v.1

restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment, or counterclaim. The obligations of the DIP Facility include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the Debtor to the DIP Lenders under the DIP Facility Documents, including without limitation all principal, interest, costs, fees, expenses and other amounts owed pursuant to the DIP Facility Documents.

6.      <u>No Obligation to Extend Credit</u>.  The DIP Lenders shall have no obligation to make loans or advances under the DIP Facility until the conditions precedent to the closing and the making of such extensions of credit under the DIP Term Sheet or the other DIP Facility Documents have been satisfied in full or waived.

7.      <u>Use of DIP Facility Proceeds</u>.  From and after the Petition Date, the Debtor is authorized to use extensions of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Facility Documents and in compliance with the Approved Budget.  The Debtor is authorized, subject to the satisfaction of the conditions set forth in the DIP Facility Documents, to use proceeds of the Collateral, subject to the Carve-Out, and to draw upon the DIP Facility (a) to pay fees, costs and expenses incurred in connection with the transactions contemplated by the DIP Facility Documents; (b) to pay other administration costs incurred in connection with the Case consistent with the Approved Budget; (c) to pay for other working capital and general corporate purposes of Debtor consistent with the Approved Budget and the "first day" orders entered by the Court; and (d) after delivery of a Carve-Out Trigger Notice, to fund a reserve to pay the Carve-Out.

**DIP Liens and Collateral**

8.    Effective immediately upon entry of this Interim Order, pursuant to section 364(c)(2) of the Bankruptcy Code, and without the necessity of the execution by the Debtor (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the DIP Agent or the DIP Lenders of any Collateral, the DIP Lenders are hereby granted a continuing valid, binding, enforceable, non-avoidable, and automatically and properly perfected, *nunc pro tunc* to the Petition Date, post-petition security interests in and liens (collectively, the "**DIP Liens**") on any and all unencumbered property, assets and real and personal property of the Debtor currently owned and hereafter acquired (the "**Collateral**"), including, without limitation, the following: (a) commercial tort claims; (b) all books and records pertaining to the other property described in this Paragraph; (c) all property of the Debtor held by any party, including all property of every description, in the custody of or in transit to any party for any purpose, including safekeeping, collection or pledge, for the account of the Debtor or as to which the Debtor may have any right or power, including but not limited to unencumbered cash; (d) all other goods (including but not limited to fixtures) and personal property of the Debtor, whether tangible or intangible and wherever located; (e) the proceeds of any Avoidance Actions (subject to the entry of a Final Order); and (f) to the extent not covered by the foregoing, all other unencumbered assets or property of the Debtor, whether tangible, intangible, real, personal or mixed, and all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing, and in each case to the extent of the Debtor's respective interest therein.

9.      DIP Lien Priority.

(a)      *DIP Liens*.  The DIP Liens shall be junior only to the Carve-Out (as applicable), and shall otherwise be senior in priority and superior to any and all unsecured liens or claims on or to any of the Collateral, subject to all valid perfected non-avoidable senior preexisting liens as of the Petition Date.

(b)      *Treatment of DIP Liens*.  Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereafter granted in the Case or any Successor Case.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or any Successor Case.  The DIP Liens shall not be subject to challenge under sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

**Provisions Common to DIP Financing Authorizations**

10.      Carve-Out.

(a)      *Carve-Out*.  As used in this Interim Order and the DIP Facility Documents, the term "**Carve-Out**" shall mean the sum (i) all fees required to be paid to the clerk of the Court or any claims and noticing agent acting in such capacity and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code *plus* interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) fees and expenses of up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); and (iii) allowed and unpaid claims for unpaid fees, costs, and expenses

12

(the "**Allowed Fees**") incurred by persons or firms retained by the Debtor or a Statutory Committee, if any, whose retention is approved by the Court pursuant to section 327, 328 or 363, and 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**"), subject to the terms of the Approved Budget, the Interim Order, the Final Order and any other interim or other compensation order entered by the Court that are incurred (A) at any time before delivery to the Debtor by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice, subject to any limits imposed by the Approved Budget, the Interim Order or Final Order; and (B) after the occurrence (the "**Trigger Date**") and during the continuance of an Event of Default and delivery of written notice (the "**Carve-Out Trigger Notice**") thereof (which may be by electronic mail) to the Debtor, the Debtor's counsel, the U.S. Trustee, and lead counsel for any Statutory Committee, if any, in an aggregate amount not to exceed $300,000; *provided*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any grounds. Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against the DIP Lenders, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Facility Documents, including the DIP Term Sheet, including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, or 550 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders; (c) attempts to prevent, hinder or otherwise delay any of

13

the DIP Lenders' assertion, enforcement or realization upon any Collateral in accordance with the DIP Loan Documents and the Final Order; (d) paying any amount on account of any claims arising before the commencement of the Case unless such payments are approved by an order of the Court; or (e) after delivery of a Carve-Out Trigger Notice, any success, completion, back-end or similar fees.

(b)      *No Direct Obligation to Pay Allowed Fees; No Waiver of Right to Object to Fees.*   Other than the funding of the Carve-Out with the proceeds of the DIP Facility as provided herein and in the DIP Facility Documents, the DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with this Case, any Successor Case, or otherwise.  Nothing in this Interim Order or otherwise shall be construed: (i) to obligate the DIP Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement, other than the Carve-Out; (ii) to increase the Carve-Out if incurred or Allowed Fees are higher in fact than the fees and disbursements of Professional Person set forth in the Approved Budget after the occurrence of the Trigger Date; (iii) as consent to the allowance of any fees and expenses of Professional Persons; or (iv) to affect the rights of the DIP Lenders or any other party-in-interest to object to the allowance and payment of such fees and expenses.

(c)      *Payment of Compensation.*   Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Persons or shall affect the right of the DIP Lenders to object to the allowance and payment of such fees and expenses. So long as no Termination Event has occurred and is continuing, the Debtor shall be permitted to pay fees and expenses allowed and payable by order (that has not been vacated or stayed, unless

RLF1 20736081v.1

the stay has been vacated) under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, solely to the extent set forth in the Approved Budget and not to exceed the amounts set forth in the Approved Budget, *provided* that any such payment shall be subject to entry of a final order of the Court on final application for allowance of fees and expenses to be filed for each Case Professional (including ordinary course professionals).

11.     <u>Drafting, Execution and Modification of DIP Facility Documents</u>.  The Debtor and the DIP Lenders are hereby authorized, to implement, in accordance with the terms of the respective DIP Term Sheet, any non-material modifications of the DIP Term Sheet without further order of this Court; provided, however, that copies of such modifications will be provided to the U.S. Trustee and any Statutory Committee.  Upon entry of this Interim Order, all material modification or amendment of the DIP Term Sheet shall only be permitted pursuant to an order of this Court on notice pursuant to Local Rule 2002-1(b) and a hearing.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of the DIP Term Sheet shall be effective unless set forth in writing, signed on behalf of the Debtor and the DIP Lenders.

12.     <u>Use of Proceeds; Budget Maintenance</u>.  The proceeds of the DIP Facility shall be used solely in accordance with the terms of the DIP Term Sheet, including the Approved Budget (subject to the Permitted Variance and the Carve-Out), and this Interim Order.  The Approved Budget shall be updated, modified or supplemented (with the consent of and/or at the request of the DIP Lenders) from time to time, solely in accordance with the DIP Term Sheet.

13.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to permit the Debtor to grant the DIP Liens.

RLF1 20736081v.1

14.    <u>Right to Credit Bid</u>. Subject to Section 363(k) of the Bankruptcy Code, each of the DIP Lenders shall have the right to "credit bid" up to the full allowed amount of their respective claims in connection with any sale of all or any portion of the Collateral, including, without limitation, sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of a restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii) of the Bankruptcy Code or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

15.    <u>Automatic Perfection of DIP Liens</u>.

(a)    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Lenders to the priorities granted herein.

(b)    Notwithstanding the foregoing, the DIP Lenders and the DIP Agent are hereby authorized to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action, as they may elect, in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent or any DIP Lender chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the

16

liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination immediately upon entry of this Interim Order.

(c)     The Debtor is authorized to execute and deliver promptly upon demand to the DIP Lenders, all such financing statements, mortgages, control agreements, notices and other documents as any of the DIP Lenders may reasonably request. The Debtor is authorized to, and shall, execute and deliver to the DIP Lenders such agreements, financing statements, mortgages, instruments and other documents as any of the DIP Lenders may reasonably request to evidence, confirm, validate, or perfect the DIP Liens; and the failure by the Debtor to execute any documentation relating to the DIP Liens shall in no way affect the validity, enforceability, nonavoidability, perfection, or priority of such liens.

(d)     The DIP Lender, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, and accordingly, each officer is authorized to accept and record the photocopy of this Interim Order, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

(e)     Subject to entry of the Final Order and section 1146(a) of the Bankruptcy Code, except as otherwise provided herein, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Subject to entry of the Final Order, any such

17

provision shall have no force and effect with respect to the granting of post-petition liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by the Debtor in favor of the DIP Lenders in accordance with the terms of this Interim Order.

16.    Proceeds of Subsequent Financing.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in the Case or any Successor Case, shall obtain credit or incur debt in breach of the DIP Facility Documents at any time prior to the repayment in full of all obligations under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtor and its estate, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lenders to be applied in accordance with this Interim Order and the DIP Term Sheet.

17.    Maintenance of Collateral/Cash Management.  Until the payment in full in cash of all obligations of the DIP Facility, and the termination of the obligation of the DIP Lenders to extend credit under the DIP Facility, the Debtor is authorized to (a) maintain and insure the Collateral in amounts, for the risks, and by the entities as required under the DIP Facility Documents and (b) maintain their cash management system as in effect as of the Petition Date, (i) subject to the DIP Facility Documents; (ii) subject to any order of this Court with respect to the Debtor's cash management system, as may be modified, with the prior written consent of the DIP Lenders, by any order that may be entered by this Court and (iii) in a manner which, in any event, shall be reasonably satisfactory to the DIP Lenders.  Other than as expressly required pursuant to the DIP Facility Documents, any order of this Court with respect to the Debtor's cash management system or this Interim Order, no modifications to the Debtor's cash management

system existing as of the Petition Date may be made without the prior approval of the DIP Lenders.

18.     Reserved.

19.     Termination Event.  The occurrence of an Event of Default under the DIP Term Sheet is referred to herein as a "Termination Event."

20.     Rights and Remedies Following Termination Event.

(a)     *Termination.*     Immediately upon the occurrence and during the continuation of a Termination Event, the DIP Lenders, with no further action of this Court, may notify the Debtor in writing that a Termination Event has occurred and is continuing (such notice, a "**Termination Notice**" and the date of any such notice, the "**Termination Notice Date**").

(b)     *Notice of Termination.*     Any Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtor, counsel to any Statutory Committee (if one has been formed, or if one has not been formed, the Debtor's consolidated 20 largest creditors), and the U.S. Trustee. The Remedies Notice Period shall commence on the Termination Notice Date and shall expire five (5) business days after the Termination Notice Date (the "**Remedies Notice Period**", and the date of the expiration of the Remedies Notice Period, the "**Termination Date**").

(c)     Without limiting the rights and remedies of the DIP Lenders under the DIP Term Sheet, the DIP Lenders, may immediately (I) upon the occurrence of and during the continuation of a Termination Event following the issuance of a Termination Notice or (II) the Termination Date, *inter alia*, (A) declare (x) subject to the Remedies Notice Period, all obligations owing under the DIP Facility Documents to be immediately due and payable, without

presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtor, (y) the termination, reduction or restriction of any further commitment to extend credit to the Borrower to the extent any such commitment remains, and (z) terminate the DIP Facility and the DIP Facility Documents as to any future liability or obligation of any DIP Lender, , but without affecting any of the liens or the obligations (any of the actions set forth in the foregoing (x), (y) and (z), a "**Termination**"); and (B) unless the Court orders otherwise during the Remedies Notice Period, exercise all other rights and remedies provided in the DIP Facility Documents and applicable law.

(d)     During the Remedies Notice Period, any party in interest shall be entitled to seek an emergency hearing with this Court for the purpose of contesting a Termination, including whether a Termination Event has occurred and/or is continuing.  During the Remedies Notice Period, the Debtor may continue to use the Collateral in the ordinary course of business and consistent with the most recent Approved Budget (subject to the Permitted Variance), but may not enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales, or transactions with non-Debtor affiliates) that are not in the ordinary course of business or otherwise in furtherance of the administration of the Case.

21.    Good Faith.

(a)     *Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order.*  Each of the DIP Lenders has acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions

20

of this Interim Order are hereafter modified, amended or vacated by a subsequent order of the Court, or any other court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.

22.    <u>Proofs of Claim</u>.  Subject to entry of the Final Order, any order entered by the Court establishing a bar date for any claims (including without limitation administrative claims) in the Case or any Successor Case shall not apply to any DIP Lenders (solely in their capacity as such).  Subject to entry of the Final Order, the DIP Lenders (solely in their capacity as such) shall not be required to file proofs of claim or requests for approval of administrative expenses authorized by this Interim Order in the Case or any Successor Case, and the provisions of this Interim Order, and, upon the entry thereof, the Final Order, relating to the amount of the obligations under the DIP Facility and the DIP Liens shall constitute a timely filed proof of claim and/or administrative expense request.  For the avoidance of doubt, subject to entry of the Final Order, the books and records of the DIP Lenders shall be deemed conclusive as to the amount of the claims of each such party.

23.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Lenders under the DIP Term Sheet, the Debtor shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Lenders reasonable access to the Debtor's premises, knowledgeable officers of the Debtor, and its books and records, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.

24.    <u>Prohibited Use of DIP Facility, Collateral, Carve-Out, Etc.</u>  Without the prior written consent of the DIP Lenders, the DIP Facility and the Collateral may not be used:

        a.    for the payment of interest and principal with respect to the prepetition indebtedness of the Borrower except for: (i) the Carve-Out; (ii) prepetition

21

employee wages, benefits and related employee taxes as of the Petition Date; (iii) prepetition sales, use and real property taxes; (iv) prepetition amounts due in respect of insurance financings, premiums and brokerage fees; (v) payment of fees and expenses (including fees and expenses of professionals) of the DIP Lender, and subject to the limitations set forth in the Approved Budget; (vi) other "first day" interim and final orders permitting payment of prepetition claims; (vii) cure amounts reasonably acceptable to the DIP Lenders under leases and executory contracts assumed with approval of the Court; and (viii) other Prepetition Indebtedness to the extent authorized by the Court and set forth in the Approved Budget;

b.      subject to this Interim Order (or Final Order, when applicable) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the rights, remedies, claims or defenses of DIP Lenders under the DIP Term Sheet, this Interim Order (or, when applicable, the Final Order) including preventing, hindering or otherwise delaying the exercise of any rights, remedies, claims or defenses by the DIP Lenders under the DIP Term Sheet, this Interim Order (or, when applicable, the Final Order) the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (A) invalidating, setting aside, avoiding or subordinating, in whole or in part, the obligations of the DIP Facility or DIP Liens; (B) for monetary, injunctive or other affirmative relief against the DIP Lenders or the Collateral; or (C) preventing, hindering or otherwise delaying the exercise by the DIP Lenders of any rights and remedies under this Interim Order or the Final Order, the DIP Facility Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Lenders upon any of their respective collateral;

c.      to make any distribution under a plan of reorganization in any Case;

d.      to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, without prior written consent of the DIP Lenders, unless otherwise set forth in the Approved Budget, or unless otherwise ordered by the Court;

e.      to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests of the Debtor (including so-called "Topping Fees," "Exit Fees" and other similar amounts) without prior written consent by the DIP Lenders, unless otherwise set forth in accordance with the Approved Budget;

f.      to object to, contest, or interfere with, in any way, the DIP Lenders' enforcement or realization upon any of the Collateral once a Termination

22

Event has occurred, except as provided for in this Interim Order or the Final Order, or seek to prevent the DIP Lenders from credit bidding in connection with any proposed plan of reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code;

g.    to use or seek to use any insurance or tax refund proceeds constituting Collateral other than solely in accordance with the Approved Budget and the DIP Facility Documents;

h.    to incur indebtedness other than in accordance with the Approved Budget or the DIP Facility Documents without the prior consent of the DIP Lenders;

i.    to object to or challenge in any way the claims, liens, or interests held by or on behalf of the DIP Lenders;

j.    to assert, commence, prosecute or support any claims or causes of action whatsoever, including, without limitation, any Avoidance Action, against the DIP Lenders;

k.    to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of, or seek equitable relief from, any of the obligations under the DIP Facility, the DIP Liens, or any other rights or interests of the DIP Lenders;

l.    to sell or otherwise dispose of the Collateral other than as contemplated by the DIP Term Sheet; or

m.    for any purpose otherwise limited by the DIP Term Sheet.

25.    Reserved.

26.    No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

27.    Reserved.

28.    Reserved.

29.    No Marshaling/Applications of Proceeds.  Upon entry of the Final Order, the DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

RLF1 20736081v.1

30.    <u>Discharge Waiver</u>.   The Debtor expressly stipulates, and the Court finds and adjudicates that, none of the obligations under the DIP Facility or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization or liquidation, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the obligations under the DIP Facility have been paid in full in cash on or before the effective date of a confirmed plan of reorganization or liquidation.  Except as otherwise agreed to by the DIP Lenders, the Debtor shall not propose or support any plan or sale of all or substantially all of the Debtor's assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full, in cash of all obligations under the DIP Facility.

31.    <u>Rights Preserved</u>.   Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lenders are preserved.

32.    <u>Release.</u>  Subject to the entry of the Final Order, the Debtor, on behalf of itself and its estate (including any successor trustee or other estate representative in the Case or any Successor Case) and any party acting by, through, the Debtor or its estate, hereby stipulate and agree that they forever and irrevocably (a) release, discharge, waive, and acquit the DIP Agent and the DIP Lenders, and each of their respective participants and each of their respective affiliates, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, successors, assigns and predecessors in interest (collectively, and in each case in their capacities as such, the "**Released Parties**"), from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits,

24

controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Term Sheet, the Facility Documents, or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the DIP Agent and the DIP Lenders, and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the obligations under the DIP Facility and the DIP Liens. For the avoidance of doubt, the foregoing release shall not constitute a release of any rights arising under the DIP Term Sheet or the DIP Facility Documents.

33.    <u>No Waiver by Failure to Seek Relief</u>. The failure or delay of the DIP Lenders or the DIP Agent to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Facility Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Lenders or the DIP Agent.

34.    <u>Binding Effect of Interim Order</u>.    Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary) and Closing, the terms and provisions of this Interim Order, including the liens granted herein shall, *nunc pro tunc* to the

Petition Date, become valid and binding upon and inure to the benefit of the Debtor, the DIP

Lenders, all other creditors of the Debtor, any Statutory Committee or any other court appointed

committee appointed in the Case, the U.S. Trustee and all other parties in interest and their

respective successors and assigns, including any trustee or other fiduciary hereafter appointed in

the Case, any Successor Case, or upon dismissal of the Case or any Successor Case.

35.     <u>No Modification of Interim Order</u>.  The Debtor irrevocably waives the right to

seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent

of the DIP Lenders, (i) any modification, stay, vacatur or amendment to this Interim Order; or

(ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now

existing or hereafter arising of any kind or nature whatsoever, including, without limitation any

administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the

Bankruptcy Code) in the Case or any Successor Case, equal or superior to the DIP Claims; and

(b) without the prior written consent of the DIP Lenders, any lien on any of the Collateral with

priority equal or superior to the DIP Lien.  The Debtor irrevocably waives any right to seek any

material amendment, modification or extension of this Interim Order without the prior written

consent, as provided in the foregoing, of the DIP Lenders, and no such consent shall be implied

by any other action, inaction or acquiescence of DIP Lenders.

36.     <u>Interim Order Controls</u>.  This Interim Order shall constitute this Court's findings

of fact and conclusions of law based upon the record of the Case at the Interim Hearing and shall

upon its entry by this Court take effect and be fully enforceable *nunc pro tunc* to the Petition

Date.  There shall be no stay of execution or effectiveness of this Interim Order, notwithstanding

anything to the contrary in the Bankruptcy Rules or other applicable law; any applicable stay is

hereby waived.  In the event of any inconsistency between the terms and conditions of the DIP

26

Term Sheet, the DIP Facility Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

37.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case; or (d) pursuant to which the Court abstains from hearing the Case or any Successor Case.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Lenders pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Case or any Successor Case, and shall maintain their priority as provided by this Interim Order until all obligations under the DIP Facility have been paid in full.

38.    <u>Cooperation Among the Parties.</u>  Except in the event not reasonably practicable, the Debtor shall provide copies of all substantive motions, applications, other pleadings, and proposed forms of order with respect thereto (all of which shall be in form and substance reasonably acceptable to the DIP Lenders) to the DIP Lenders prior to the filing of any such substantive motions, applications, other pleadings, and proposed forms of order with respect thereto with the Court.

39.    <u>Preservation of Rights Granted Under this Interim Order</u>.

(a)    Except as expressly provided herein or in the DIP Term Sheet, no claim or lien having a priority senior to or *pari passu* with that granted by this Interim Order to the DIP Lenders shall be granted while any portion of the obligations under the DIP Facility remains outstanding, and the DIP Liens shall not be subject to or junior to any lien or security interest

that is avoided and preserved for the benefit of the Debtor's estates under section 551 of the Bankruptcy Code or subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all obligations under the DIP Facility shall have been indefeasibly paid in full, the Debtor shall not seek, and it shall constitute an Event of Default under the DIP Term Sheet, if the Debtor seeks, or if there is entered (i) any stay, vacatur, rescission or modification of this Interim Order or the Final Order without the prior written consent of the DIP Lenders, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lenders, (ii) an order converting the Case to a case under chapter 7 of the Bankruptcy Code or dismissing any of these Case, or (iii) unless otherwise approved by the DIP Lenders, an order granting a change of venue with respect to the Case or any related adversary proceeding.  If an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (x) the DIP Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all obligations under the DIP Facility shall have been paid and satisfied in full and shall, notwithstanding such dismissal, remain binding on all parties in interest, and (y) this Court shall retain jurisdiction, to the extent it has jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any obligations under the DIP Facility incurred prior to the actual receipt of written notice by the DIP Lenders, as applicable, of the effective date of such reversal, stay, modification or vacatur, or (ii) the validity, priority, or enforceability of the DIP

Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of Collateral or any obligations under the DIP Facility incurred by the Debtor to the DIP Lenders prior to the actual receipt of written notice by the DIP Lenders of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and pursuant to the DIP Term Sheet and the DIP Facility Documents with respect to all such uses of the Collateral and all obligations under the DIP Facility.

(d)     Nothing contained in this Interim Order shall limit the Debtor's fiduciary duties.

40.     <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and approval of the DIP Facility on a final basis is scheduled for February 28, 2019 at 1:30 p.m. (ET) before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, Courtroom 1, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801.

41.     <u>Notice of Final Hearing</u>:  Within three (3) Business Days of the date of the entry of this Interim Order, the Debtor shall serve, by United States mail, first-class postage prepaid, a copy of the Motion and this Interim Order upon: (i) the U.S. Trustee; (ii) the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the parties included on the Debtor's consolidated list of twenty (20) largest unsecured creditors; (v) the DIP Lenders; (vi) counsel to the DIP Lenders; (vii) financial institutions where the Debtor holds bank accounts; (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002; (ix)

Automotive Rentals, Inc.; (x) proposed counsel for any Statutory Committee and (xi) local and state taxing authorities in jurisdictions where the Debtor operates its business.

42.    <u>Objection Deadline</u>:  Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Court, and personally served upon:  (a) proposed counsel to the Debtor, (b) the U.S. Trustee; (c) proposed counsel to any Statutory Committee; and (d) counsel to the DIP Lenders, so that such objections are filed with the Court and received by said parties on or before 4:00 p.m. prevailing Eastern Time on February 21, 2019 with respect to entry of the Final Order.

RLF1 20736081v.1

43.    <u>Retention of Jurisdiction</u>.   The Court shall retain jurisdiction to enforce this Interim Order according to its terms to the fullest extent permitted by applicable law.

Dated: _____, 2019
       Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

RLF1 20736081v.1